**TOWNPLACE HOMEOWNERS' ASSOCIATION, INC. et al., Appellants,**

v.

**Don E. McMAHON et al., Appellees.**

**No. 17509.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 10, 1980.

Rehearing Denied Feb. 14, 1980.

Morris & Campbell, Rhett G. Campbell, Houston, for appellants.

Butler, Binion, Rice, Cook & Knapp, Norman J. Riedmueller, J. Sidney Crowley, Tom Alexander, Houston, for appellees.

Before COLEMAN, C. J., and DOYLE and WALLACE, JJ.

DOYLE, Justice.

Townplace Homeowners' Association, Inc., individually, and J. Edward Scott and Burt C. Holdsworth, in behalf of themselves and all others similarly situated, (appellants) appeal the decision of the trial court based .upon a jury verdict denying enforcement of restrictive covenants involving a townhome on Lot 17, Townplace Addition, Section One, Houston, Texas, owned by Karen McMahon Wharton and built by contractors, Don E. McMahon and Ed McMahon Interest, Inc. (appellees). Individual appellees are related to each other with Don E. McMahon being the father of Karen and Ed.

Appellants claim that they are entitled to an injunction against appellees based upon the jury's finding that the townhome was built in a manner constituting a distinct or substantial variance from the plans approved by the Architectural Control Committee (ACC) of the subdivision, regardless of any equities in appellees. Appellees rely on the defense of laches, impossibility of compliance and the balancing of equities.

We affirm.

In 1976, appellees purchased lot 17 in the subdivision and in May 1977, they decided to build a home on their property. In accordance with the restrictive covenants of this subdivision, appellees submitted blueprints for their home to an architectural control committee for written approval. When appellees submitted their plans, the architectural control committee was composed of Edward Scott, Lloyd Coker, and Kent Turner. These three people had replaced an earlier committee that was specifically named in the restrictive covenants and the evidence is disputed as to the validity of electing these subsequent committee members. It is undisputed, however, that these plans were approved with a notation written on the face of the plans stating, "wood siding, match exist."

This notation on the face of appellees' plans is the basis for the controversy in this suit. Evidence adduced at the hearing showed the majority of the homes in this subdivision have a wood siding known as horizontal 117D yellow pine siding, while some have stucco or brick siding. The pool house and gates of the addition had the same vertical fir siding as was substituted by the appellees on their townhome. The notation on appellees' plan did not specifically state 117D yellow pine siding, however they understood the words "wood siding, match exist" to refer to such siding.

Appellees attempted to get 117D yellow pine siding, but were unable to obtain sufficient quantities.

During the first week of July, 1977, appellant Scott noticed the vertical siding on appellees' garage and voiced his disapproval. On July 20, after appellees had substantially completed the siding on the townhome, appellant Scott formally objected in writing to the siding and stated appellees could not substitute the vertical fir siding for 117D pine siding. Effective July 12, Lloyd Coker and Kent Turner resigned as members of the architectural control committee, and were replaced on July 18, by appellant Burt C. Holdsworth and Robert L. Sonfield, Jr. Correspondence between the parties could not settle their differences and appellants instituted this suit.

Appellants, on behalf of themselves and a class of persons composed of the homeowners in this addition, sought injunctive relief and damages. Both parties filed numerous motions and orders which are not necessary to this appeal. There is however, a point of error regarding the class action status of this litigation. On October 17, 1977, Judge Paul Pressler, then of the District Court, certified this suit as a class action pursuant to Rule 42(b)(1), (2), (3) and (4), T.R.C.P. Members of the class were informed of this suit and extended the opportunity to exclude themselves from the suit. Five members of the class opted out. Prior to final trial of this suit, Judge David Hittner decertified the class and dismissed all unnamed parties to the suit. The case proceeded to a trial before a jury only as to the named plaintiffs. Based upon the jury's

answers to special issues and such as the court was authorized to make by law, Judge Duke Godard, entered a final judgment that appellants be denied injunctive relief and that they take nothing against appellees.

Appellants present two points of error, the first of which contends the trial court erred in not granting their motion for entry of judgment and in submitting nine of the eleven special issues answered by the jury.

 As a general rule an assignment that the trial court erred in overruling a motion for judgment is too general for consideration by this court. *Clay v. Clay*, 550 S.W.2d 730 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). In addition, this point is multifarious in that appellants object to nine different special issues, lodging as many as three objections to certain issues, thereby asserting approximately fifteen objections in a single point of error. *City of San Antonio v. Mendoza*, 532 S.W.2d 353 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.). However, pursuant to Rule 422, we will consider the point as properly raised.

Appellants first contend that they proved appellees failed to obtain approval of the ACC to substitute vertical siding for the required 117D siding in violation of a restrictive covenant contained in their deed, so appellants are entitled to injunctive relief based on the jury's finding that there was a distinct or substantial variance from the approved plans.

 The issue before us is more accurately stated to be not whether the appellees made a distinct or substantial variance from their approved plans, but whether appellees' substitution of vertical fir siding for the prescribed 117D pine siding constituted a distinct or substantial breach of the deed restrictions. In this injunction suit, the right of a jury trial prevails as in all equitable actions, with only ultimate fact issues being determined. *Alamo Title Co. v. San Antonio Bar Association*, 360 S.W.2d 814 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.). Appellees, having pleaded substantial

compliance with the restrictions, laches, unavailability of required materials and the right to have the equities balanced, were entitled to prove such ultimate issues as a matter of defense and have special issues submitted to the jury thereon.

 After the jury had answered the defensive special issues submitted by appellees, appellants filed a motion for entry of judgment, attacking the action of the court in entering a take nothing judgment against them based on the jury verdict. Since their points of error are based on denial of their motion for judgment n.o.v., all attacks on these issues are "no evidence" points. *Chemical Cleaning Inc. v. Chemical Cleaning and Equipment Service, Inc.*, 462 S.W.2d 276 (Tex.1970); *Fox v. Boese*, 566 S.W.2d 682 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.); *Travelers Insurance Company v. Williams*, 378 S.W.2d 110 (Tex.Civ.App.—Amarillo 1964, writ ref'd n.r.e.). Accordingly, we are required to review the evidence and the reasonable inferences to be drawn therefrom most favorably in support of the jury's finding.

In summary, the appellees adduced the following testimony in support of their issues:

The plans for Mrs. Wharton's townhome had been approved on May 13, 1977. By June 17, installation of the siding had begun. For two or three weeks, the builder had been looking for grade D yellow pine siding, but this type of siding was not available at the time.

At that time the gates to the Addition and the common pool house had vertical fir siding. This suggested to the builder that vertical fir siding might be used as a substitute for the other unavailable siding. Vertical fir siding is an improvement over horizontal pine siding. Appellees were making a sincere effort to conform to the appearance of the Addition and did the best they reasonably could under the circumstances.

On July 5, appellant Scott, acting as chairman of the ACC, inspected Mrs. Wharton's townhome under construction. The wood siding was substantially in place on

the sides of the house, but no complaint was expressed with the siding, except regarding the color of paint. On July 12, a property owners' meeting was attended by the individual plaintiffs and no one complained about the siding at that time. The first time this controversy over the siding surfaced was on July 20. By that time, the siding was up.

If the siding had to be torn off, the damage to Mrs. Wharton would be great, the estimates being between $7000 and $9500. On the other hand, the detriment to others caused by the difference in siding is miniscule. The siding is on the sides of the house, away from the street, and is painted to conform to the neighborhood.

 In response to special issue number one the jury found that the townhome of Mrs. Wharton was built in a manner constituting a distinct or substantial variance from the plans approved by the ACC, but the jury also found in the next issue that "the use of the vertical fir siding on Karen Wharton's home" did not "constitute a substantial and material violation of the Restrictions of Townplace, Section One." In response to special issues 4, 5 and 6, the jury found respectively, that (1) requiring appellees to remove the fir siding and replace it with grade D yellow pine siding would impose a detriment to appellees in excess of any damage to appellants because of the use of the fir siding; (2) that at the time appellees had to order the siding for their home, it was reasonably impracticable to wait until grade D yellow pine might become available in sufficient quantities and consistency to put on their home; and (3) that the fir siding was a reasonable substitute for the grade D yellow pine siding. On the special issues 3 and 8 which addressed to the question of laches the jury found that (1) appellants did not give Karen Wharton notice that they rejected her siding before her siding was substantially in place; and (2) that at the time J. Edward Scott inspected the house on the evening of July 5, 1977, sufficient siding was in place so that he should have known that the siding was being used.

 From the above summary of testimony, we find ample evidence to support the jury's findings on the submitted special issues. This same evidence supports the court's implied findings in submitting the issues regarding the equities in support of the judgment. Rule 279, Texas Rules of Civil Procedure. The court, in balancing the equities could have found from the evidence that the harm arising from granting the injunction ($7000 to $9500 to remove and replace the siding) far outweighed the harm, if any, suffered by appellants by having the injunction denied. In *Cambridge Shores Homeowners Association, Inc. v. Spring Valley Lodge Company*, 422 S.W.2d 10 (Tex.Civ.App.—Dallas 1967, no writ), the court stated:

> In view of the great harm to be done to the appellees if the injunction were to be granted, and the small harm, if any done to appellants by the court's refusal to enjoin appellees, we think the balance of the equities lies with appellees. The court properly denied the injunction.

We have examined the cases cited by appellants in support of their prayer for injunctive relief. *Ireland v. Bible Baptist Church*, 480 S.W.2d 467 (Tex.Civ.App.—Beaumont 1972), 411 U.S. 906, 93 S.Ct. 1529, 36 L.Ed.2d 195 (1973), cert. denied; *Braes Manor Civic Club v. Mitchell*, 368 S.W.2d 860 (Tex.Civ.App.—Waco 1963, err ref'd n.r. e.); *Melton v. Miller*, 391 S.W.2d 568 (Tex. Civ.App.—Houston 1965, no writ; *Gunnels v. North Woodland Hills Community Association*, 563 S.W.2d 334 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). However, it is noted that in each of the cases cited, the court found the offending structures were in violation of the land usage restrictions. In that respect they are distinguishable from the case before us. In none of the cited cases was the question of distinct or substantial change from one type of material to another raised or determined on trial or appeal. Appellants' point of error number one is overruled.

In point of error number two appellants state the trial court abused its discretion in withdrawing the class certification order

and dismissing the unnamed members of the class.

Whether the trial court properly grants or denies class certification is a matter of sound discretion, reviewable on appeal. *Group Hospital Service, Inc. v. Barrett*, 426 S.W.2d 310 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref. n.r.e); *Ford v. Bimbo Corp.*, 512 S.W.2d 793 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ). A suit for construction of restrictive covenants is especially suited for class action litigation. *Adams v. Owens*, 519 S.W.2d 260 (Tex.Civ.App.—Beaumont 1975, writ ref. n.r.e.); *Davis v. Congregation Shearith Israel*, 283 S.W.2d 810 (Tex.Civ.App.—Dallas 1955, writ ref. n.r.e.).

In the case before us it is undisputed that the dismissal was involuntary, i. e., the court ordered the dismissal. When the dismissal is involuntary, there is no danger of collusion by the named representatives at the expense of the class members and no notice is required. *Bantolina v. Aloha Motors, Inc.*, 75 F.R.D. 26 (D.Hawaii 1977). In any event, since the original class certification was erroneously based on inconsistent subdivisions of Rule 42, T.R.C.P., it was necessary to decertify the class action in order to avoid such error. Nothing in the record before us shows that appellants refiled, or sought to refile for class certification thereafter. We overrule appellants' point of error number two.

Although not presented by point of error, appellants complain that they were entitled to attorneys' fees in a case of this nature. Article 1293b, T.R.C.S. (1977) does provide for "reasonable attorney's fees in addition to his costs and claim," but only to "a prevailing party who asserted the action for breach of a restrictive covenant, . . ." Appellants failed to meet the basis requirement.

The judgment of the trial court is affirmed.