AMOCO PRODUCTION CO., et al., Appellants,

v.

G. P. HARDY, Jr., et al., Appellees.

No. 1891.

Court of Appeals of Texas, Corpus Christi.

Dec. 30, 1981.

---

Jesse R. Pierce, Porter & Clements, Charles E. Fitch, C. M. Hudspeth, DeLange, Hudspeth, Pitman & Katz, Elaine B. Davis, Frank G. Harmon, Dean J. Capp, Baker & Botts, Melvin L. Hawkins, Amoco Production Co., Houston, for appellants.

Charles L. Black Aycock, Holland, Abernathy, Tindall & Aycock, Houston, for appellees.

Before BISSETT, YOUNG and GONZALEZ, JJ.

## OPINION

BISSETT, Justice.

This is an interlocutory appeal, pursuant to Tex.Rev.Civ.Stat.Ann. art. 2250 (Vernon Supp. 1980–1981), from an order determining that this case should·be maintained as a class action under Rule 42(b)(4), T.R.C.P.

Appellees [hereinafter "the named plaintiffs"][1] instituted this suit on April 12, 1979, in the district court of Matagorda County, against Amoco Production Company and Getty Oil Company [hereinafter "the defendants"],[2] two of the appellants herein, to recover additional royalties allegedly due under various oil and gas leases covering land in Matagorda County, Texas. The named plaintiffs allege that they are the owners of certain of the "landowners'" interest in oil, gas, and mineral leases and units covering lands located in the Bay City and East Bay City Fields in Matagorda County, and that the defendants are the owners of a portion of the working interest in oil, gas, and minerals leases covering lands located in the Bay City, East Bay City, and Lucky Fields in Matagorda County.

The named plaintiffs claim that Amoco and Getty have failed to pay royalties on gas produced from the subject land in accordance with the terms of the leases. Their claim is based on the gas royalty clause, contained in most of the subject leases, which requires royalties on gas sold or used off the premises to be a fraction of the *market value* of the gas sold or used, rather than the *proceeds* from its sale. The plaintiffs seek an accounting, declaratory judgment, and money judgment for the alleged royalty deficiencies, on behalf of themselves and all persons similarly situated having oil and gas leases covering properties in the Bay City, East Bay City and Lucky Fields.

On February 6, 1981, the plaintiffs filed a motion for an order certifying this case as a class action. Following an evidentiary hearing, the trial court determined that this case should proceed as a class action, and

1. The named plaintiffs in the trial court were:
   G. P. Hardy, Jr., D. B. Moore, agent and attorney in fact for the beneficiaries of D. P. Moore, Deceased, Martha Moore, W. Jerome Moore, Lois Moore O'Brien, Dolph Beadle Moore, Jr., Elizabeth Moore Norwood, et vir L. Paul Norwood, Leola Moore, Independent Executrix of the Estate of Adele Moore Harvey, and D. B. Moore, Independent Executor of the Estate of Thelma Moore Jackson.

2. The defendants in the trial court; the appellants in this Court, are:
   Amoco Production Company, Getty Oil Company, Milton W. Arnold, J. S. Michael Co., R. A. Venable, First City National Bank of Houston, John S. Maxon and Barth Energy Corporation.

signed an order defining the class as follows:

"... a class consisting of all persons owning royalty interests under all leases and units, operated by any of Defendants, or in which any of Defendants own all or a portion of the working interest, covering lands located within the following areas in Matagorda County, Texas, to-wit: the East Bay City Field, the Bay City Field, and the Lucky Field;"

The defendants duly perfected their appeal from this order. They raise two points of error, namely: the trial court abused its discretion in certifying this case as a class action because (1) there was no showing that questions of law or fact common to the purported class predominate over individual questions; and (2) there was no showing that the named plaintiffs will fairly and adequately protect the interest of the class.

The Bay City Field, primarily an oil field, comprises approximately 1700 surface acres covered by seven or eight non-pooled oil and gas leases. The Moore plaintiffs own royalty interest in only one of these leases, which amounts to approximately eleven percent of the total royalty interest in the field; C. P. Hardy, Jr., a named plaintiff, owns *no* royalty interest in the Bay City Field. There are a total of 181 royalty owners. Getty owns 100% of the working interest, and Amoco owns no interest in this field.

A substantial area of the Bay City Field is covered by the Cobb lease. Persons owning one-half of the royalty interest in this lease have filed a separate suit against Getty seeking additional royalties for gas produced from the Cobb lease.

The East Bay City Field consists of approximately 1,900 leases with over two thousand royalty owners. Amoco owns about one-third of the working interest, with Getty owning approximately two-thirds. In addition to Getty and Amoco, there are several small working interest owners in the East Bay City Field who are not parties to this suit.

The named plaintiffs' interest in the units in the East Bay City Field are as follows:

East Bay City Field

| Unit Name | Percent of Named Plaintiffs' Interest | |
|---|---|---|
| | Amoco Records | D. B. Moore's Testimony |
| (1) Barth Unit | 0% | 0% |
| (2) Bay City No. 12 | 3% | 5% |
| (3) Bay City No. 13 | 10% | 5% |
| (4) Bay City No. 19 | 6% | 5% |
| (5) Bay City No. 20 | 0% | 0% |
| (6) Bay City No. 25 | 0% | 0% |
| (7) Bay City No. 26 | 0% | 0% |
| (8) First Nat. Bank | 0% | 0% |
| (9) G. P. Hardy, Jr. | 33⅓% | |
| (10) Insall Unit | 0% | 0% |
| (11) McWilliams Unit | 0% | 0% |
| (12) Metzger Unit | 6% | less than 3% |
| (13) Millican Unit | 0% | 0% |
| (14) Grover Moore Unit | 53% | 70–80% |
| (15) Rugeley Unit | 14% | 20–30% |
| (16) School District Unit | 4% | 3–7% |
| (17) Thompson Unit | 0% | 0% |

Thus, of the eleven gas units and six oil units in the East Bay City Field, the named plaintiffs hold interest in only eight units, three of which are oil units. They have royalty interests in twenty-five of the 1900 East Bay City leases.

The gas produced from the East Bay City Field by Amoco and Getty is sold to three companies. They are: the City of Bay City Gas Company, an intrastate purchaser; the Natural Gas Pipeline Company and the Tennessee Gas Pipeline Company, interstate purchasers.

The Lucky Field consists of several non-unitized leases in which there are apparently thirteen royalty owners. The named plaintiffs own *no* interest in the Lucky Field. Amoco owns 100% of the working interest in two of these leases; Getty has no interest in the Lucky Field. Other leases in this field are held by lessees who are not parties to this suit. All of the gas produced by Amoco from the Lucky Field is contractually committed to interstate purchasers.

Amoco introduced into evidence various division orders covering the East Bay City Field, executed by a majority of the named plaintiffs. These division orders are on two different forms; one set was executed between the years 1954 and 1955; the other set in 1975 and 1979. The earlier division orders provide for gas royalties based on market value at the well of the gas "which

for all purposes hereunder shall be the price received" for the gas. The latter forms provide for royalties "based on the net proceeds at the wells."

The parties are in agreement that the trial court certified this case as a Rule 42(b)(4) T.R.C.P. class action. Rule 42 provides, in pertinent part:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\*    \*    \*    \*    \*    \*

"(4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

■ Our review of the trial court's determination that this case should proceed as a class action is limited to determining whether the trial court abused its discretion. *Townplace Homeowners' Assoc., Inc. v. McMahon*, 594 S.W.2d 172 (Tex.Civ.App. —Houston [1st Dist.] 1980, writ ref'd n. r.

e.). A trial court abuses its discretion by failing to properly apply the law to undisputed facts. *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 519 (1961); *Birds Const., Inc. v. Gonzalez*, 595 S.W.2d 926, 929 (Tex.Civ.App.—Corpus Christi 1981, no writ). We will therefore determine whether the trial court properly applied Rule 42(b)(4) to the above stated facts, which are substantially undisputed.

■ The first portion of Rule 42(b)(4) requires a finding that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." We interpret "questions ... common to the ... class" to mean questions which when answered as to *one* class member are answered as to *all* class members. Thus, to determine whether the trial court properly applied Rule 42(b)(4) to the undisputed facts of this case, we must ascertain the questions which will predominate the trial of the merits of this case, and then decide if these questions are common to the class within our interpretation of Rule 42(b)(4). We look to *First Nat'l. Bank of Weatherford v. Exxon Corp.*, 622 S.W.2d 80 (Tex.1981) and *Exxon Corp. v. Middleton*, 613 S.W.2d 240 (Tex.1981), to ascertain the predominant questions in this case.

In *Middleton* and *Weatherford*, as in this case, the ultimate issue was whether certain royalty owners were entitled to additional gas royalties. The predominant questions in these cases included the following:

(1) The terms of the particular lease under which the royalty owner claimed his gas royalties, i.e., whether the lease required royalties on gas sold or used off the premises to be based on market value or proceeds;

(2) the location where the gas was sold or used;

(3) whether that location was within the leased premises;

(4) the quantity of gas sold or used off the leased premises;

(5) the market value of the gas sold or used off the leased premises; (this

required a detailed examination of comparable gas sales);

(6) whether the gas was committed to interstate or intrastate purchasers;

(7) whether the royalty owner executed a division order; and

(8) when the division order, if any, was revoked.

In this case, the trial court's order certifying this case as a class action grouped into a single class all royalty owners in three fields. Since the royalty owners claim their gas royalties under different leases (over 1900 leases), the trial court, on the trial of the merits, would be required to answer each of the above questions as to each lease. This is necessary because a finding that one lease requires royalties based on market value is not a finding that all the leases involved require market value royalties. Also, a finding that gas is sold or used outside the premises described in one lease is not a finding that it is sold or used outside the premises described in another lease.

█ Thus, the predominant questions enumerated above will affect only individual class members, rather than the class as a whole. We find no questions common to the class, as defined by the trial court, which will predominate over any of the individual questions involved in this suit. We therefore hold that the trial court failed to properly apply Rule 42(b)(4) and thereby abused its discretion in certifying this case as a class action that included "all persons owning royalty interests under all leases and units, operated by any of Defendants, or in which any of Defendants own all or a portion of the working interest," in the three named fields. The defendants' first point of error is sustained.

Finding no basis for certifying this case as a class action, the judgment of the trial court is reversed, and judgment is here rendered denying the plaintiffs' motion for an order certifying this case as a class action. Rule 434, T.R.C.P.

REVERSED and RENDERED.

GONZALEZ, Justice, concurring.

I concur. A class action of this nature involving three different fields, different units and various non-unitized leases is unprecedented and virtually unmanageable. The defendants' liability on the ultimate issue of whether the plaintiffs are owed additional royalties on gas produced from lands in which they have an interest depends on a myriad of factors including, but not limited to: 1) the language of the applicable leases; 2) whether division orders have been executed, and if so; 3) the language of the division orders at the time of executing the division orders; 4) the location of the sale of the subject gas, whether the gas is sold to interstate or intrastate purchasers; and 5) the identity of the field, unit or lease from which the gas is produced.

The evidence in the trial court showed that these factors vary among the plaintiffs and the only royalty owners in the purported class. As a result, plaintiffs did not establish that they met the prerequisites of class actions that there be questions of law or fact common to the class, and the prerequisite that the claims of the representatives be typical to the class. Therefore, any attempt to try this case as a class action would result in the splintering of the case into numerous individual trials. See 3b Moore's Federal Practice ¶ 23.45[2] (2d Ed. 1976).

Plaintiffs argue that their ownership interest in the Bay City and East Bay City Fields qualifies them to represent owners in the Lucky Field where they have no interest. This contention is without merit. If this were so, the plaintiffs could claim that they would be entitled to represent royalty owners in fields anywhere in the State of Texas, and this should not be and is not the law.

To qualify as an adequate representative, one must be a member of the class one represents and "possess the same interests and suffer the same injury" as the class members. *East Texas Motor Freight Systems, Inc. v. Rodriguez,* 431 U.S. 385, 403, 97 S.Ct. 1891, 1986, 52 L.Ed.2d 453 (1977).

The plaintiffs, besides having failed to satisfy the commonality and typicality requirement of Rule 42(b), T.R.C.P., also failed to prove that under these facts, a class action is superior to other available methods of fair and efficient adjudication of this controversy.

The trial court failed to properly apply the standards of Rule 42(b)(4) to the facts. Therefore, the trial court's decision is arbitrary and unreasonable and should be reversed.