**RSR CORPORATION, Appellant,**

v.

**Norman HAYES, Appellee.**

**No. 05–83–01028–CV.**

Court of Appeals of Texas, Dallas.

May 9, 1984.

Rehearing Denied June 7, 1984.

Reagan M. Brown, D. Dudley Oldham, Fulbright & Jaworski, Houston, for appellant.

Frederick M. Baron, Jane N. Saginaw, Dallas, Blake Bailey, Tyler, for appellee.

Before CARVER, ALLEN and SHUMPERT, JJ.

ALLEN, Justice.

This is an interlocutory appeal from an order determining that this case should be maintained as a class action under TEX.R. CIV.P. 42(b)(4) (Vernon 1979). In its only point of error, appellant, RSR Corporation, claims that the trial court abused its discretion in certifying this case as a class action. We agree, and therefore, we reverse and render.

Appellees brought suit individually and further sought to be recognized as representatives of a class of persons owning property within a two mile radius of RSR's secondary lead smelter in West Dallas. In their suit against RSR, the appellees claimed that lead emissions from the RSR lead smelter had damaged the landowners within the two mile radius. Appellees alleged in paragraph IV of their original petition that they and the proposed class members had suffered the following injuries: (1) damage to real and personal property; (2) personal discomfort and illness; (3) deprivation of the recreational use of their land; and (4) dimunition of property value. The appellees based their cause of action on the theories of nuisance, trespass,

strict liability, intentional tort, and negligence. At the hearing seeking class certification, the appellees presented as expert witnesses, a real estate broker, a doctor of pharmacology and toxicology, and a doctor of environmental science and engineering. The real estate broker testified as to the effect of lead emissions on property values within the area. The doctor of environmental sciences presented the combined results of his research and of an E.P.A. study which measured the amounts of lead in soil samples taken from within the two mile radius. The doctor of pharmacology and toxicology testified as to the potential health problems that lead can have on different individuals. The data was presented in the form of an isopleth, a map containing concentric circles, which showed the various levels of lead concentration on the property around the RSR smelter. The trial court certified a class of residential property owners near the lead smelter and RSR brings this appeal. RSR claims that the trial court abused its discretion in applying Rule 42(b)(4) to the undisputed facts, in that the undisputed facts show that the predominant questions in the case are not questions common to the class members, rather they are questions which affect only individual members of the class.

 Our review of the trial court's determination that this case should proceed as a class action is limited to determining whether the trial court abused its discretion. *Amoco Production Co. v. Hardy*, 628 S.W.2d 813, 816 (Tex.App.—Corpus Christi 1981, writ dism'd). An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859 (Tex.1978). However, a trial court abuses its discretion by failing to properly apply the law to the undisputed facts. *Amoco Production*, 628 S.W.2d at 816; *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 519 (1961). Therefore, we must determine whether the trial court properly applied Rule 42(b)(4) to the undisputed facts of this case. Rule 42 provides, in pertinent part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defense of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Under Rule 42(b)(4), the trial court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. "Questions ... common to the ... class" means questions, which when answered as to one class member, are answered as to all class members. *Amoco Production*, 628 S.W.2d at 816. Thus, to determine whether the trial court properly applied Rule 42(b)(4) to the undisputed facts of this case, we must ascertain the questions which will be predominant at the trial on the merits of this case, and then decide if these questions are common

to the class within our interpretation of Rule 42(b)(4). *Amoco Production*, 628 S.W.2d at 816.

The record indicates the following questions are predominant in this case:

1) What is the quality, amount, and distribution of RSR's lead discharges;

2) What is the amount of lead on each of the class members' property;

3) Is the amount of lead on class members' properties, if any, hazardous;

4) What is the effect of lead on the class members as it relates to the value, use and enjoyment of their property;

5) Does RSR's conduct constitute negligence or gross negligence;

6) Is RSR strictly liable in tort;

7) Does RSR's activities constitute a common law nuisance;

8) Has RSR committed trespasses or other intentional torts;

9) Are RSR's acts or omissions a proximate/producing cause of the class members' damages;

10) Do affirmative defenses apply to the class members;

11) Have the class members failed to mitigate their damages, if any;

12) What types of damages, if any, have the class members sustained;

13) What are the monetary amounts of damages sustained by the class members, if any;

14) What effect does lead have on a given individual;

15) What personal discomfort or illness has a class member suffered, if any.

RSR argues that the undisputed facts in this case show that the predominant questions enumerated above are not questions common to the class, in that the questions, when answered as to one class member, are not answered as to all class members. Specifically, RSR claims that the issue regarding its liability to the class plaintiffs, along with the accompanying questions of affirmative defenses and mitigation, can only be answered with respect to each individual claim. On the other hand, the appellees contend that the question of RSR's liability to the class plaintiffs is a common question and that the only individual question is the amount of damages that each class plaintiff has incurred. We agree with RSR.

The undisputed opinion testimony of the appellees' expert witnesses shows that 1,000 parts of lead per million is the hazardous level for lead in the soil. The expert's data, represented by an isopleth map, showed what percentage of the soil samples taken from an area around the RSR smelter contained 1,000 parts of lead per million. The map contained four isopleths. The inside circle represented an area where 84% of the soil samples taken contained more than 1,000 parts per million. The second circle represented an area where 50% of the samples taken exceeded 1,000 parts per million. The third circle designated an area where only 30% of the soil samples exceeded 1,000 parts per million. This 30% isopleth closely paralleled the geographic boundary of the class which the trial court certified. The experts testified that the level of lead deposits varied on any given piece of property located within the geographic boundaries of the certified class. The undisputed expert testimony showed that within the 30% isopleth, 70% of the soil samples taken would not contain hazardous levels of lead. The effects of lead on a class plaintiffs' property were shown to vary depending on the location of the property, the use of the property, and the characteristics of the property's inhabitants. A corner lot on a busy intersection could have higher lead deposits due to automobile traffic. Those class members who used part of their property for gardening had a greater health risk than did others. Exposure to the lead varied among the individual members of the class depending on how long an individual member had resided within the boundaries of the class. The appellee's experts testified that small children who played in the dirt would be exposed to greater health risks than adults.

■ TEX.R.CIV.P. 42 is patterned after the federal class action rule, and the feder-

al decisions and authorities interpreting it are persuasive. *Huddleston v. Western Nat. Bank*, 577 S.W.2d 778, 780 (Tex.Civ. App.—Amarillo 1979, ref'd n.r.e.); *see also Smith v. Lewis*, 578 S.W.2d 169 (Tex.Civ. App.—Houston [14th Dist.] 1979, ref'd n.r. e.). In *Boring v. Medusa Portland Cement Co.*, 63 F.R.D. 78 (M.D.Pa.), *appeal dismissed*, 505 F.2d 729 (3d Cir.1974), residents of York County, Pennsylvania, sought to maintain a class action for damages and injunctive relief against two defendant corporations whose operations released contaminants into the air. The court denied class certification, observing that the only common fact alleged by the claims of the proposed class was that their damages were caused by the same source. The variety of types of damage alleged made a single finding of liability impossible in a single mass proceeding. In *Ouellette v. International Paper Company*, 86 F.R.D. 476 (D. Vermont 1980), the plaintiffs sought certification of two classes: (1) a "water class," and (2) an "air class." The "water class" consisted of 400 lakefront property owners who claimed that IPC's discharge of papermaking waste into Lake Champlain constituted a nuisance which interfered with the enjoyment of, and diminished the value of, their property. The "air class" consisted of some 3,150 inland property owners who claimed that the airborne discharges from IPC's paper mill created a nuisance in their town. Just as the appellees did in the instant case, the "air class" in *Ouellette* also sought monetary damages for impaired health and for damage to their property. The court in *Ouellette* certified the "water class" but denied certification of the air class, holding that:

> The proposed air class presents a somewhat different picture. This class is more like that proposed and denied in *Boring*, where the "nature of the differing injuries runs the gamut from damage to fee simple and leasehold interests in the real estate to damaged personalty, unpleasant surroundings and ... compensable personal injury." *Boring*, 63, F.R.D. at 84–85. Defendant would no

doubt offer separate defenses to the claims of impaired health, and such claims are likely to be the kind that individuals have an interest in prosecuting separately. Fed.R.Civ.P. 23(b)(3)(A). See *Yandle* [*v. PPG Industries, Inc.*,] 65 F.R.D. [566] at 572 ("[M]embers of the purported class have a vital interest in controlling their own litigation because it involves serious personal injuries...."). There is no " 'common nucleus of operative facts,' " *Eisen* [*v. Carlisle & Jacquelin*,] 391 F.2d [555] at 566 (citing *Siegel v. Chicken Delight, Inc.*, 271 F.Supp. 722 (N.D.Cal.1967)), that unites the liability claims of this proposed class as there is in the water class. Whereas the pollution of the lake may uniformly limit the enjoyment and decrease the value of all lakeshore property because the lake is a common source of recreation, the same may not be said of air pollution's effect on the inland property. For instance, unpleasant odors may not effect the value of a dairy farm, if at all, in the way they would a strictly residential area. The various uses to which property is put in the area of the proposed air class makes class treatment of property damage claims as inappropriate as class treatment of health impairment claims. We find that common questions of law and fact will not predominate in a class treatment of the air class's claims and we therefore deny certification of the air class. *Ouellette*, 86 F.R.D. at 483.

In their original petition, the appellants alleged and prayed for general and special damages which included personal discomfort and illness. Just as the "air class" in *Ouellette*, the appellants have alleged a variety of damages and theories of liability. The undisputed facts in the instant case show that the amount of lead on each class plaintiff's land varies greatly. In fact, within a significant area of the geographic class, 70% of the class members do not have hazardous levels of lead on their land. Therefore, the question as to the amount of lead on a class member's property, and the question of whether the

lead, if any, is at a hazardous level which injures the class member, are questions not common to the class, because when they are answered as to one class member, they are not answered as to all class members. Furthermore, the appellees, as individuals and as representatives of the class, seek to recover damages based upon several alternative theories of liability. The undisputed facts show that the question of RSR's liability is not common to the class. A finding that RSR is liable to one class member is not a finding that RSR is liable to each class member under each and every theory of liability. For instance, to establish liability under a theory of negligence, the plaintiff must show that the defendant's negligence is a proximate cause of their injury. *Carey v. Pure Distributing Corporation*, 133 Tex. 31, 124 S.W.2d 847, 849 (1939). To prove proximate cause, however, a plaintiff must show some injury in fact. *Bryant v. Kimmons*, 430 S.W.2d 73, 77 (Tex.Civ.App. —Austin 1969, no writ). The undisputed facts show that many of the class members have suffered no injuries. Thus, the answer to the question of RSR's liability to a particular class member under a theory of negligence will not be common to the class.

The appellees also sought to recover damages for personal injuries suffered from exposure to the lead. The undisputed facts show that children run a greater risk of health problems from lead than do adults and that lead affects individuals differently. Furthermore, some of the plaintiffs have lived in the area for many years, while others have lived there only a short while. Therefore, the questions concerning a class plaintiff's personal injuries and RSR's liability thereon are not questions common to the class because when the question is answered as to one class member it is not answered as to all class members.

■ Accordingly, we hold that the undisputed facts show that the predominant questions in this case are not questions of law or fact common to the members of the class, but rather, are questions which affect individual members of the class.

Therefore, we hold that the trial court failed to properly apply Rule 42(b)(4) to the undisputed facts and thereby abused its discretion in certifying the class as it did. Appellant's point of error is sustained. Consequently, the judgment of the trial court is reversed, and judgment is here rendered denying the appellees' motion for an order certifying this case as a class action.

We withdraw our opinion of February 17, 1984, and the preceding is now our opinion. The appellee's motion for rehearing is denied.