TANA OIL AND GAS CORPORATION and Teco Gas Marketing Company, Appellants,

v.

Garth C. BATES, Appellee.

No. 03–98–00083–CV.

Court of Appeals of Texas, Austin.

Oct. 22, 1998.

Roberta S. Dohse, Chaves, Gonzales & Hoblit, L.L.P., Corpus Christi, for Appellants.

Britton D. Monts, Law Office of Britton D. Monts, P.C., Dallas, Tom C. McCall, McCall & Ritchie, LLP, Austin, for Appellee.

Before POWERS, JONES and KIDD, JJ.

KIDD, Justice.

Appellants, Tana Oil and Gas Corporation and Teco Gas Marketing Company ("Tana"), bring this interlocutory appeal of an order certifying a class, represented by Garth C. Bates and Richard G. Cernosek (the "Bates class"), in a cause involving the alleged breach of contract regarding royalties from oil and gas leases, and breach of the implied covenant to market the gas represented by those leases. In five points of error Tana charges the trial court with abuse of its discretion in (1) improperly deciding the merits in a certification hearing; (2) finding the required commonality necessary for maintenance of a class; (3) finding that common questions of fact and law predominate; (4) finding class certification to be a superior method for adjudicating the controversy; and (5) failing to sever the question of improper post-production charges from the remaining controversy. We will affirm the order of the trial court.

## BACKGROUND

The underlying cause of action involves the alleged underpayment of royalties to the Bates class by Tana under the terms of a field-wide gas purchase contract. Members of the Bates class owned royalty interests in a series of Austin Chalk wells located in Fayette County, and executed gas leases with Tana under similar or identical lease contracts. All of the gas leases with Tana held by the Bates class contained the following identical language regarding payment of royalties on gas production:

As royalty, lessee covenants and agrees: . . . (b) to pay lessor for gas and casing-head gas produced from said land (1) when sold by lessee, one-eighth [or other appropriate percentage] of the amount realized by lessee, *computed at the mouth of the well,* or (2) when used by lessee off said land or in the manufacture of gasoline or other products, one-eighth [or other appropriate percentage] of the amount realized from the sale of gasoline or other products extracted therefrom and one-eighth [or other appropriate percentage] of the amount realized from the sale of residue gas after deducting the amount used for plant fuel and/or compression. (Emphasis added).[1]

The Bates class makes two general claims: (1) that Tana improperly deducted post-production costs from their royalty payments; and (2) that Tana breached the implied covenant to market by failing to get the best price possible for the gas produced by the class.

The dispute between Tana and the Bates class involves royalty payments paid by Tana to class members from 1992 to 1995. During this period Tana sold all of the gas production represented by the class members' leases to Clajon Gas Company ("Clajon") under a single gas purchase contract (the "Clajon contract"). Thus, all members of the class had identical gas royalty payment clauses in leases signed with the same gas company, and all the gas produced by the class members' leases was sold to a single purchaser under the terms of a single gas purchase contract. The Bates class argues that because the Clajon contract governs the sale of all gas represented by the class members' royalty interests, the contract's terms affected each royalty interest owner similarly. The class further contends that Tana improperly charged the class members for post-production compression and treating costs, and that these costs were ultimately deducted by Tana from class members' royalty payments. The class contends that the language in each of their gas leases, namely the clause "computed at the mouth of the well,"

1. It is relevant to note that a previous attempt to certify a class of royalty owners having a dispute with Tana failed due to an overly broad class description. Appellees amended their motion for class certification, expressly limiting the class description to those royalty owners having gas leases with Tana containing *identical provisions* concerning gas royalty payments.

identifies the relevant point of sale to be at the wellhead. Thus, according to the Bates class, any costs deducted from royalties regarding compression or treatment occurring after the gas had been brought to the surface were inappropriate. It is undisputed that the Clajon contract called for Tana to absorb the costs for compression and treatment of the gas to move it off the lease and prepare it for sale. Because Tana was charged for and allegedly deducted these costs occurring off the lease from class members' royalty payments, the Bates class believes Tana breached its contractual duty to pay royalties based on gas production computed at the wellhead. Conversely, Tana argues that these post-production costs were reimbursed to Tana by Clajon through a separate incentive agreement between Clajon and a Tana subsidiary, Teco Gas Marketing Co. ("Teco"). Tana contends that the reimbursements paid by Clajon through Teco to Tana for post-production costs made the class members whole, and therefore, royalties were paid to the Bates class according to the entire value of the gas sold.

■ The Bates class also claims that Tana breached the implied covenant to market the gas represented by their ownership interests because Tana failed to contract for the best price possible, and therefore, did not act as a reasonably prudent operator. Oil and gas law in Texas recognizes an implied covenant in gas leases such that a lessee must use due diligence to market the oil or gas produced within a reasonable time and at a reasonable price. *See Cole Petroleum Co. v. United States Gas & Oil Co.,* 121 Tex. 59, 41 S.W.2d 414 (Tex.1931). The behavior of a lessee in this regard must conform to the standard of a reasonably prudent operator. *See Amoco Prod. Co. v. Alexander,* 622 S.W.2d 563, 567 (Tex.1981). The Bates class contends Tana breached this duty because the price agreed to in the Clajon contract for

their gas allegedly falls far below the market level. Tana argues the opposite: that it did, indeed, act in a prudent manner. Furthermore, Tana contends that any discussion regarding the implied covenant to market in this cause necessarily involves individualized, well-specific inquiries not suitable for class certification.

The trial court conducted a hearing to consider Bates's motion for class certification. The court heard argument from both sides and asked each to indicate authorities and provide evidence which would aid the court in making the correct decision. Bates produced nine volumes of evidence accumulated through previous discovery, including the gas leases at issue and expert testimony regarding royalty payments. Tana failed to introduce any evidence. The record does not contain Tana's division orders sent to class members, nor does it contain any pooling unit agreements. After making findings of fact and conclusions of law, the trial court granted Bates's motion to certify the class.[2] Tana brings this interlocutory appeal from the trial court's order certifying the class.

## REQUIREMENTS OF CLASS CERTIFICATION

■ At the certification stage, the plaintiffs have the burden of establishing their right to maintain an action as a class action. *Life Ins. Co. v. Brister,* 722 S.W.2d 764, 770 (Tex.App.—Fort Worth 1986, no writ). However, this burden is minimal; class proponents generally are not required to make an extensive evidentiary showing in support of a motion for class certification. *Morgan v. Deere Credit, Inc.,* 889 S.W.2d 360, 365 (Tex.App.—Houston [14th Dist.] 1994, no writ). Because class certification is subject to modification or decertification throughout the trial at the discretion of the trial court, Texas law generally favors the certification

---

**2.** The trial court certified the class under the following description: "All persons who, from 1992 through August 1995, owned royalty interests in the oil, gas and mineral leases dedicated under the March 27, 1992 gas purchase contract between Tana, as operator, and Clajon, as purchaser with the following gas royalty language: 3(b) to pay lessor for gas and casinghead gas produced from said land (1) when sold by lessee,

*[royalty fraction] of the amount realized by lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, [royalty fraction] of the amount realized from the sale of gasoline or other products extracted therefrom and [royalty fraction] of the amount realized from the sale of residue gas after deducting the amount used for plant fuel and/or compression...."*

of classes at an early stage of the proceeding. *Id.* Texas Rule of Civil Procedure 42(a) sets out the following prerequisites for certification of a class action:

> (1) the class must be so numerous that joinder is impracticable [*numerosity* ];
> (2) questions of law or fact must be common to the class [*commonality* ];
> (3) the class representatives must have claims or defenses typical of the class [*typicality* ]; and
> (4) the class representatives must fairly and adequately protect the interests of the class [*adequacy of representation* ].

Tex.R. Civ. P. 42(a).

The trial court made the following findings regarding the prerequisites of rule 42(a): (1) that evidence indicated at least three hundred royalty owners in the plaintiff class, thereby meeting the numerosity requirement; (2) that the royalty owners were similarly situated because of the identical language in the leases and the single gas purchase contract, that common questions of fact and law existed,[3] and that damages were subject to common proof, thereby meeting the commonality requirement; (3) that the claims of the class representatives and those of the absent class members involved the same issues (post-production expenses and whether Tana acted as a reasonably prudent operator), thereby meeting the typicality requirement; and (4) that plaintiffs' counsel has experience in complex litigation and there exists no conflict of interest between the class representatives and the absent class members, thereby meeting the adequacy of representation requirement. Tana does not seriously challenge the trial court's findings on three of the four prerequisites of Rule 42(a), reserving its attack for the trial court's finding of commonality. Because Tana's points of error do not specifically address the requirements of numerosity, typicality, and adequacy of representation, we consider them established for purposes of this interlocutory appeal. We will address Tana's challenge of the trial court's finding of commonality in turn.

A trial court may certify a class action if a plaintiff establishes all four prerequisites in Rule 42(a), and meets at least one of the criteria for class maintenance in Rule 42(b). *See* Tex.R. Civ. P. 42(b); *see also Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 149 (Tex.App.—Austin 1995, writ dism'd w.o.j.). As this class was certified under Rule 42(b)(4), this Court must examine two additional criteria supporting class certification: "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members [*predominance* ], and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy [*superiority* ]." Tex.R. Civ. P. 42(b)(4). Tana challenges the trial court's findings on both the predominance and the superiority issues.

## STANDARD OF REVIEW

 Our review of this cause presents a very narrow question: Did the trial court abuse its discretion in certifying this cause as a class action? *See Hutchins v. Grace Tabernacle United Pentecostal Church,* 804 S.W.2d 598, 601 (Tex.App.—Houston [1st Dist.] 1991, no writ). A trial court has broad discretion in determining whether to grant or deny class certification. *American Express*

---

**3.** The trial court, in its finding of facts and conclusions of law, included the following as common questions of fact or law:

- Under the gas purchase contract was the point of sale at the wellhead?
- What, if any, post-production fees and charges incurred beyond the point of sale should have been deducted from the royalty owners' gas sale proceeds?
- Did Tana conduct itself as a reasonably prudent operator in the marketing and disposition of gas production from the Plaintiff Class' leases?

- Did Tana violate its covenant to act as a reasonably prudent operator in marketing gas production from the Plaintiff Class' leases?
- Did Tana obtain the highest price reasonably obtainable in the area for the royalty owners' share of gas sold?
- Should Tana have paid royalties on gas consumed off lease for plant fuel and to run the purchaser's compressors?
- Should Tana have paid royalty on gross volumes of gas metered at the wellhead as opposed to "net residue" volumes?
- What amount of damages, if any, was suffered by the Plaintiff Class?

*Travel Related Servs. Co. v. Walton,* 883 S.W.2d 703, 707 (Tex.App.—Dallas 1994, no writ). An appellate court must not substitute its judgment for that of the trial court. *Id.* Even if a trial court determines an issue differently than would an appellate court, the ruling does not necessarily constitute an abuse of discretion. *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ) (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)); *see also Vinson v. Texas Commerce Bank–Houston, Nat'l Ass'n,* 880 S.W.2d 820, 824 (Tex.App.—Dallas 1994, no writ). In determining whether a matter should be litigated as a class action, a trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to any guiding principles. *Dresser Indus.,* 847 S.W.2d at 371. Further, a trial court abuses its discretion if it does not properly apply the law to the undisputed facts, but does not abuse its discretion if it bases its decision on conflicting evidence. *Vinson,* 880 S.W.2d at 823.

In making its class certification decision, the trial court can consider the pleadings and other material in the record, along with the evidence presented at the hearing. *Employers Casualty Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self–Ins. Fund,* 886 S.W.2d 470, 474 (Tex.App.—Austin 1994, writ dism'd w.o.j.). We view the evidence in the light most favorable to the trial court's action, entertaining every presumption that favors its judgment. *Vinson,* 880 S.W.2d at 823; *see also Texas Dep't of Mental Health & Mental Retardation v. Petty,* 778 S.W.2d 156, 160–61 (Tex.App.—Austin 1989, writ dism'd w.o.j.); *Brittian v. General Tel. Co.,* 533 S.W.2d 886, 889 (Tex.Civ.App.—Fort Worth 1976, writ dism'd) (citing *Richardson v. Kelly,* 144 Tex. 497, 191 S.W.2d 857 (Tex.1945)).

## DISCUSSION

We now turn to Tana's specific points of error. We begin by reiterating that the trial court enjoys wide discretion in the decision to certify a class. An order certifying a class may not be disturbed on appeal unless a trial court has clearly abused its discretion. *Dresser Indus.,* 847 S.W.2d at 372. This standard creates a heavy burden for Tana to overcome.

At the outset, Tana attacks the order certifying the class contending that the trial court abused its discretion by impermissibly ruling on the merits during a class certification hearing. Tana specifically objects to the trial court's finding of facts interpreting the Clajon contract to identify the relevant point of sale to be at the wellhead.[4] Tana argues that such an interpretation essentially disposes of the dispute regarding post-production costs largely in the Bates class' favor, indicating that the trial court may have pre-judged the outcome. It is inappropriate for the trial court to try the substantive merits of a claim when conducting a certification hearing. *Brister,* 722 S.W.2d at 772. However, a court must inquire into substantive issues of law to determine whether class requirements have been met. *Intratex Gas Co. v. Beeson,* 960 S.W.2d 389, 398 (Tex.App.—Houston [1st Dist.] 1998, no writ). In this cause, a preliminary interpretation of the Clajon contract was necessary to determine whether issues of commonality would predominate over individual issues. One of the crucial issues presented at the certification hearing was whether the single Clajon contract substantially controlled the contractual relationship between the parties. The preliminary determination interpreting the point of sale to be "at the wellhead" supported the finding of predominance because it eliminated many individualized fact distinctions between class members. This inquiry was important at the certification hearing, not for any determination of liability on the merits, but to determine if the class members' claims were similar to the extent that consolidation into a

---

4. The trial court's Findings of Facts and Conclusions of Law included the following: "9. Under Section 7.1 of the gas purchase contract between Tana and Clajon, the point of delivery and sale of gas under the contract is at the inlet of buyer's metering facilities to be located at or near each of seller's wells. Upon delivery, title to the gas and all components pass to and vest in the buyer. All of the gas at issue was sold at the wellhead."

class would be an effective and efficient alternative. After reviewing the findings of fact and conclusions of law, the extensive record, and documentary evidence introduced at the certification hearing, we regard the trial court's findings as a necessary preliminary ruling and not an improper review of the merits. We overrule Tana's point of error in this regard.

Tana next disputes the trial court's finding of commonality. The threshold to establish commonality is not high. *Beeson*, 960 S.W.2d at 396 (citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir.1986)). The commonality requirement for class certification is a qualitative test, not quantitative, and a single issue common to all class members may be sufficient. *Id.* The commonality requirement for class certification does not mean that all questions, or even most questions, must be identical; rather, some common issue of fact or law must be present in the complaints of all class members. *See id.; see also Dresser Indus.*, 847 S.W.2d at 372. In the instant cause, all class members share identical lease language, which largely defines the contractual relationship between Tana and each class member. Furthermore, each class member's gas was sold by Tana under the terms of a single contract. Though not exhaustive of the issues common in this cause, these two issues are highly significant and sufficient to support the trial court's finding of commonality. We overrule Tana's point of error regarding commonality.

Tana next challenges the trial court's finding of predominance. Tana argues that, even if sufficient issues of common fact and law exist to satisfy the Rule 42(a) requirement of commonality, that these common issues do not predominate according to the more stringent standard of predominance under Rule 42(b). Although the meaning of "predominate" is not clear under the terms of the rule, it is clear that the existence of common questions in a claim is not, in itself, sufficient for class certification and the trial court has a duty to evaluate the relationship between the common and individual issues. *Brister*, 722 S.W.2d at 772. The trial court must first identify the substantive issues of

law that will control the outcome of the litigation. *Beeson*, 960 S.W.2d at 398 (citing *Brister*, 722 S.W.2d at 772). The purpose of this inquiry is not to weigh the substantive merits of each class member's claim, but rather to determine whether the character and nature of the case satisfies the requirements of the class action procedural rules. *See id.* Even where it is not conclusively established that common issues predominate, the most efficient approach is to certify the class, and, if necessary after the case has developed, to dissolve the class or certify subclasses if common questions will not predominate at trial. *Id.; Dresser Indus.*, 847 S.W.2d at 375; *Brister*, 722 S.W.2d at 775.

In its findings of fact and conclusions of law, the trial court included the following in support of its finding of predominance:

38. The common issues of fact and law predominate. The Class members' claims emanate from various oil, gas and mineral leases and the covenants implied by Texas law. All of the wells at issue in this lawsuit are dedicated under a single gas purchase contract and each class member's oil, gas and mineral lease has identical gas royalty language. The Court finds that any differences that exist among the various Class members are irrelevant for class certification purposes.

39. Common, not individual, issues will be the focus of the parties' efforts. At the hearing, Plaintiffs presented a common liability theory. . . . At trial it can be reasonably expected that Plaintiffs will present a common theory of breach of contract and breach of the implied covenant to act as a reasonably prudent operator. The Court finds that the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

Tana argues that the claim by the Bates class of a breach of the implied covenant of marketability could possibly break down into individualized, well-specific inquiries into the determination of liability. Tana contends that issues surrounding the alleged breach of the duty to market necessarily involve individualized factors for each well or unit, including such factors as location and quality of

production. Tana further *speculates* that these individual inquiries will come to predominate at a trial on the merits. Tana cites authority for the proposition that a class certification cannot be maintained where the predominant questions enumerated will affect only individual class members. *See Amoco Prod. Co. v. Hardy,* 628 S.W.2d 813, 817 (Tex.App.—Corpus Christi 1981, writ dism'd). In *Hardy,* the appellate court overruled an order certifying a class because it found that the individual issues would necessarily predominate a trial on the merits. *Id.* However, the class certified in *Hardy* involved three different gas fields, multiple defendants, differing pooling units, and different royalty terms under 1900 different leases. Conversely, the Bates class involves class members having identical royalty terms in their leases, a single defendant, and a single unifying field-wide contract under which terms the gas was sold.

█ Tana further argues that the absence of division orders and pooling unit agreements in the record necessarily prohibits the trial court from finding that common issues will predominate at a trial on the merits; that the possibility of division orders and pooling unit agreements affecting the parties' contractual arrangements bars the certification of this class. We disagree. Nothing prevented Tana from entering these division orders and pooling unit agreements into the record at the certification hearing. It is disingenuous to now argue their absence undermines the class. Though Bates carried the burden of meeting each requirement of Rule 42, including predominance, this burden did not include introducing into evidence every conceivable document which might affect the parties' obligations. Furthermore, division orders would be largely irrelevant to this dispute as a matter of law.[5]

█ The trial court believed that the issues regarding the uniform lease clauses and the single purchase contract would predomi-nate in the determination of liability on the merits, and that these two issues were common to all class members. The trial court sits in a better position to assess the relative strength of the class action mechanism to do justice in this circumstance. Further, the trial court maintains the opportunity to address Tana's concerns through dissolution or certification of a subclass if necessary. We will not disturb the trial court's discretionary findings on this point. We overrule Tana's point of error regarding predominance.

█ Tana also disputes the trial court's finding of superiority. A class action is the superior method of adjudication when the benefits of class-wide resolution of common issues outweigh any difficulties that may arise in the management of the class. *Beeson,* 960 S.W.2d at 399. The trial court should consider alternative procedures for disposing of the dispute and compare these to the judicial resources and potential prejudice to absent class members involved in pursuing the class action. *Id.* The trial court may consider whether: (1) class members have an interest in resolving the common issues by class action; (2) class members will benefit from discovery already commenced; and (3) the court has invested time and effort in familiarizing itself with the issues in dispute. *Id.* Clearly class members have an interest in recovering allegedly underpaid gas royalties. Furthermore, to the extent that individual claims may be too small to justify the expense of litigation, the class action mechanism allows for an efficient means to resolve these disputes. Additionally, counsel for plaintiff has already conducted extensive discovery which would equally benefit all absent class members. And, the trial court has familiarized itself with the nine volumes of discovery already produced. Therefore, a single trial to adjudicate these disputes is an efficient alternative. Tana points out that few of the absent class members have filed suit, imply-

---

5. The Natural Resources Code in relevant part provides: "the execution of a division order between a royalty owner and lessee or between a royalty owner and a party other than lessee shall not change or relieve the lessee's specific, expressed or implied obligations under an oil and gas lease, including any obligation to market production as a reasonably prudent lessee. Any provision of a division order between payee and its lessee which is in contradiction with any provision of an oil and gas lease is invalid to the extent of the contradiction." Tex. Nat. Res.Code Ann. § 91.402(h) (West 1993).

ing that the need for a class action in this circumstance has yet to be demonstrated. However, there is no presumption that other class members will choose not to pursue their claims simply because they have not yet filed suit in a proposed class action. *Id.* at 395. In fact, certification of a class will prompt notice to be sent to these absent class members. *See* Tex.R. Civ. P. 42(c)(2). Should absent class members later choose to pursue their claims individually, each class member has the right to opt out of the class. *Id.* And, should sufficient class members choose to pursue their claims individually such that class certification no longer seems the superior alternative, the trial court can decertify the class. *Beeson,* 960 S.W.2d at 396. We overrule Tana's point of error regarding superiority.

■ Finally, should this Court affirm the trial court's certification of the Bates class, Tana asks us, in the alternative, to sever the question of improper post-production charges from the remaining controversy. It is properly the province of the trial court to determine whether claims should be severed. *See* Tex.R. Civ. P. 41. As mentioned before, the trial court enjoys wide discretion to dissolve the class or sever and certify any sub-issues should such action be necessary. Tex.R. Civ. P. 42(d). However, the record fails to show that this relief was ever asked of the trial court. We refuse to hold that the trial court has abused its discretion by not severing these issues *sua sponte.* We overrule Tana's final point of error.

### CONCLUSION

The trial court did not abuse its discretion in making the preliminary finding that the relevant point of sale for each class member was at the wellhead because this inquiry was a necessary step in the determination of predominance. Furthermore, the trial court did not abuse its discretion in finding commonality and predominance because the identical lease language and single gas purchase contract common to all class members largely control the contractual relationship between the parties. Finally, the trial court did not abuse its discretion in finding superiority or in failing to sever because the class action

mechanism, at this stage, is the most efficient alternative, and the trial court always maintains the opportunity to decertify or sever at a later stage should such a need be demonstrated. Having overruled Tana's five points of error, we affirm the order of the trial court.