**DeSARIO et al., Appellees,**

v.

**INDUSTRIAL EXCESS LANDFILL, INC. et al., Appellants.**

[Cite as *DeSario v. Industrial Excess Landfill, Inc.* (1991), 68 Ohio App.3d 117.]

Court of Appeals of Ohio,
Stark County.

Nos. CA–8346, CA–8348, CA–8350, CA–8356 to CA–8358, CA–8361 and CA–8393.

Decided June 24, 1991.

Robert D. Gary, Jori Bloom Naegele and Thomas R. Theado; Jerry S. Cohen and Anthony Z. Roisman; Richard D. Panza and Thomas A. Downie, for appellees.

*John R. Werren, Matthew Yackshaw* and *Merle D. Evans III; Thomas G. Hermann, Judith Yokaitis–Skutnik* and *Susan E. Wuorinen,* for appellants.

---

HOFFMAN, Judge.

On April 11, 1989, plaintiffs-appellees Marie DeSario and Alfred and Lilli Hermanowski filed a class action complaint against numerous defendants arising out of the operation and use of the Industrial Excess Landfill in Uniontown, Ohio, an unincorporated village on Stark County's northern border. The named plaintiffs purported to represent a class of members numbering "in the hundreds," and consisting of "all individuals and entities who have used, occupied, and/or owned property during the period of January 1985, to the present" within a defined area of Lake Township. In June 1989, said complaint was amended to substitute John C. Andreozzi for the Hermanowskis as a representative party. The trial court is the Court of Common Pleas of Stark County.

In August 1990, plaintiffs again amended their complaint to modify the originally defined class to include only those individuals and entities who *owned* real property during the period of January 1985, to the present "within the geographic area extending southward from Lake Township's northern border approximately 17,000 feet and eastward from Lake Township's western border 6,000 feet." Named defendants are the owners and/or operators of the landfill, transporters of toxic wastes to it and producers of toxic wastes which were sent over a number of years to the landfill.

On May 11, 1990, the named plaintiffs moved the trial court pursuant to Civ.R. 23 for certification of this action's plaintiff class, supporting their motion with an affidavit of one Marilyn A. Johnson (real estate appraiser), attesting to the common bases of the class's damages, the identifiability and numerosity of the class and the existence/typicality of the named plaintiffs' damages. Said motion was also supported by the affidavits of the plaintiffs' counsel regarding their prior experience in class action litigation. Defendants, who had earlier denied any liability for the matters alleged in the original complaint, timely responded to the subject motion. The matter came on for hearing before the trial court and by judgment entry filed September 5, 1990, the trial court granted plaintiffs' motion to certify the within action as a class action. In its entry (see appendix for complete text), the court expressly stated that "there is no just cause for delay." The class represents owners of some one thousand five hundred real property parcels.

In its entry, the court articulated the seven prerequisites required by Civ.R. 23:

1. An identifiable class must exist before certification is permissible.

2. Class representatives must be members of the proposed class.

3. The proposed class is so numerous that joinder of all members is impracticable.

4. There are questions of law or fact common to the class.

5. The claims or defenses of the representative parties are typical of the class.

6. The representative parties will fairly and adequately protect the interests of the class.

7. Class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The trial court specifically relied upon *Warner v. Waste Management, Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091.

Also in its entry, the court articulated defendants' claim that "each parcel of real estate is unique and that there would be a dissimilarity in the remedies in the varying amount of damages sought by members of the class." (Judgment entry at 4.)

Now follows a brief rendition of the pertinent facts underlying the instant litigation.

From 1965 until approximately 1980, large quantities of waste were dumped and accepted at the subject thirty-acre landfill. It is undisputed that hazardous solvents and other toxic liquid wastes were dumped there specifically during the period of 1968–1972. During the entire period of its operation, the landfill also accepted trash and other solid wastes, and beginning in 1971, residential garbage was also accepted. The solid wastes were the source of explosive methane gas for which the EPA later installed "methane monitors" in some of the nearby homes to warn occupants of imminent explosions.

The landfill was owned and operated by appellants Charles Kittinger and Industrial Excess Landfill, Inc. ("IEL"). Defendant Hyman Budoff, until 1972, was the corporation's vice president and its co-owner with Kittinger. After 1972, Budoff was IEL's sole owner and president. Appellants Goodyear, Firestone, Goodrich, Akwell and Teledyne (among others) generated and sent to the landfill nearly two million gallons of solvents and other hazardous wastes contained in fifty-gallon drums.

In 1980, the landfill was closed as a result of a consent decree ordered by the Court of Common Pleas of Stark County. Over the last eleven years, the landfill has been the subject of extensive study by the United States Environmental Protection Agency and currently an alternative water supply is being

installed for certain landowners who to this day remain very close to the site (within one-quarter mile, *e.g.*). The landfill has achieved the "distinction" of being a leading "Superfund" site as designated by the federal EPA.

We now turn to the assignments of error. For purposes of clarification, we will denote the assigned errors of IEL and those errors assigned by "the companies" (BF Goodrich, Firestone, and Goodyear).

IEL raises the following four assignments of error:

"I. The trial court abused its discretion in finding that the claims of the representative parties are typical of the claims of the class members.

"II. The trial court abused its discretion in finding that the representative parties will fairly and adequately protect the interests of the class.

"III. The trial abused its discretion in finding that common issues of law and fact predominate.

"IV. The trial court abused its discretion by finding a class action in the case to be superior to other methods of adjudication."

The aforementioned companies raise the following assignments of error:

"I. The trial court's conclusion that common questions predominate over individual issues of fact and law is in error because it ignores central issues about the nature of the evidence which defendants would seek to introduce at trial on issues of both liability and damages.

"II. The trial court erred by making substantive judgments about the viability of plaintiffs' claims in deciding a motion for class certification where such decisions are not appropriately before the court.

"III. The trial court erred by basing its decision on assumptions concerning essential elements for a class action as to which plaintiffs had failed to carry their burden of proof.

"IV. The trial court erred by ignoring circumstances which render the individual named plaintiffs inadequate representatives of the proposed class under Rules 23(A)(3) and (4).

"V. The trial court erred by concluding that trial of this case as a class action would be superior to other methods.

"VI. The trial court erred by certifying the proposed class to allow plaintiffs potentially to split causes of action.

"VII. The trial court's certification of the class was an error impermissibly jeopardizing the defendants' rights under the Ohio and United States constitutions to a fair and impartial trial because of the inevitable jury confusion which will result from trying issues of liability, damages and defenses which

are specific to hundreds of individual plaintiffs in one massive 'trial by parade.' "

Notwithstanding that multiple briefs have been filed in this matter by appellants such as Teledyne, GSX Waste Services Corp. of Ohio, Inc., and others, the above-stated assigned errors subsume any and all errors presented for our review by the alternate briefs. We now turn to the assignments of error in the order stated *supra.*

## I & II (IEL)

These two claims are closely related and will be combined for purposes of discussion. Herein appellants invoke the Civ.R. 23(A)(3) requirement that a representative's interests will be co-extensive with the interests of potential class members, and that no claim of a class member or significant aspect of such claim will go unrepresented by the representative plaintiffs. As stated by IEL, this may be summarized as follows:

"In short, in the course of proving their own claims, the representative plaintiffs must also prove the claims of the other members of the class." *McElhaney v. Eli Lilly & Co.* (D.S.D.1982), 93 F.R.D. 875.

It is the gist of IEL's argument that different elements of proof will be required herein to establish and demonstrate the claims of the individual parties who are class members. IEL contends that the circumstances of one homeowner/class member may vary dramatically from those of another homeowner/class member insofar as the individual's proximity to the site, time of purchase of home, knowledge at the time of purchase, and the extent of exposure (if any).

The court below spoke to this "typicality" issue succinctly and articulately in the following manner:

"The Court finds that this requirement has also been satisfied by the plaintiffs in that the Court finds that the claims of the representative parties in this action as owners of property within the geographic boundaries of the proposed class are the same as the claims of the class members, i.e., diminution in value of their property arising from the course of conduct of the defendants. *While the damage as suffered by members of the class may not be identical, the claims arise out of the same conduct, i.e. the operation of the Site, the transportation of materials to the Site and the production of materials which were transported to and became part of the Site.*" (Emphasis added.)

We concur with the trial court's assessment of this question. Each class member asserts a claim for the reduction in the value of his/her real property

proximately caused by the presence of the toxic subject landfill. As stated in *Warner, supra,* 36 Ohio St.3d at 98, 521 N.E.2d at 1097:

"The representative parties must 'fairly and adequately protect the interests of the class' according to Rule 23(A)(4). The analysis under this requirement is divided into a consideration of the adequacy of the representatives and the adequacy of counsel. A representative is deemed adequate so long as his interest is not antagonistic to that of other class members."

The instant class members' claims of diminished property value are surely not antagonistic to one another; these claims approach being identical. As stated in *Miles v. N.J. Motors* (1972), 32 Ohio App.2d 350, 356, 61 O.O.2d 518, 521, 291 N.E.2d 758, 763, complete identity between claims constituting each individual action is not required, only typicality. As further pointed out by appellee and the trial court, the fact that the amount of individual *damages* may differ or that damages may need to be determined on an individual basis does not preclude class certification.

IEL's first two assignments of error are overruled.

### III

The gist of IEL's third claim is that the many defendants present in this action complicate issues of fact and law to such an extent that class action is inappropriate. Appellants contend that:

"Furthermore, there are numerous factual issues which are unique to individual class members and are not common to the class as a whole. Even among the representative parties, different circumstances exist. Marie De-Sario, a longtime resident in the vicinity of the Uniontown site, failed to mitigate any damages she may have sustained, and in fact, made improvements to her property even after the government indicated a willingness to purchase her parcel of land. Dr. Andreozzi, conversely, moved to the alleged nuisance while the landfill was open and operating as a licensed facility, a fact reflected by a variety of public records. By moving to the alleged nuisance and thereby assuming the risk of living near a landfill, Dr. Andreozzi's claims are subject to certain affirmative defenses. In short, as each defendant's and each class member's particular circumstances are unique, so is the evidence tending to establish liability and damages." IEL's brief at 16.

Appellant concludes that " * * * there are too many *un*common facts in this case, especially since the approximately 1500 parcels of land in the class are located at different distances and directions from the subject landfill." (IEL's brief at 19, emphasis *sic*.)

The trial court disposed of this question in the following manner:

"* * * The Court finds that the plaintiffs have met their burden with regard to this requirement. Courts generally have given a permissive application to the commonality requirement. This prerequisite has been construed to require a 'common nucleus of operative facts'. The Court finds that there are common operative facts relative to the operation of Industrial Excess Landfill (hereinafter 'the Site'), and transportation of materials to the Site. * * * " (Judgment entry at 2–3.)

We affirm the trial court's ruling in this regard. As this court has held:

"Civil Rule 23(A)(2) requires that there be a common question *either* of fact or law. Nowhere in the rule is there a requirement that all questions of law and fact be common to the class. * * * 'The (A)(2) prerequisite *requires only a single issue common to the class.* It is settled that individual issues will invariably be present in a class action, and that *the common issues need not be dispositive of the litigation.*' " *Wilson v. First Federal S. & L. Assn. of Canton* (Feb. 11, 1985), Stark App. No. CA–6481, unreported, at 3, 1985 WL 7183, emphasis *sic*, citing 1 Newburg on Class Actions (1977) 183, Section 1110d.

In the case at bar, that single, common issue is neither nebulous nor illusory. It is a reduction in property value directly related to the presence of the landfill.

This third assignment of error is overruled.

## IV

■ Herein, IEL maintains:

"1) certification will not serve the purpose of avoiding a multiplicity of actions;

"2) unmanageability renders class action inferior as a method of adjudication;

"3) the trial court failed to consider alternative procedural mechanisms for the resolution of this litigation."

It is unchallenged that the standard of review for what amounts to the ultimate issue in the appeal *sub judice* (should this be a class action or not) is abuse of discretion. See *Vinci v. American Can Co.* (1984), 9 Ohio St.3d 98, 9 OBR 326, 459 N.E.2d 507, paragraph one of the syllabus.

Faced with this nearly insurmountable burden, it is readily apparent that reversing a class action certification requires a gross, glaring and well-nigh intentional blunder on the part of the trial court. As pragmatically stated in *Marks v. C.P. Chemical Co., Inc.* (1987), 31 Ohio St.3d 200, 201, 31 OBR 398, 399, 509 N.E.2d 1249, 1252:

"Furthermore, while a trial court's determination concerning class certification is subject to appellate review on an abuse-of-discretion standard, due deference must be given to the trial court's decision. A trial court which routinely handles case-management problems is in the best position to analyze the difficulties which can be anticipated in litigation of class actions. It is at the trial level that decisions as to class definition and the scope of questions to be treated as class issues should be made."

IEL has not presented sufficient substantive authority (as stated *supra*, this is no small task) allowing us to reverse the judgment of certification.

IEL argues that the decision is arbitrary in the following manner:

"Pursuant to the plaintiffs' definition of the affected class, quite literally, properties on one side of the street may be included in the class, while properties on the opposite side of the street are not. Given the allegations of the plaintiffs, that harmful substances have migrated from the site and contaminated air, soil, and water, it is ridiculous to assume that one may draw a line within which property owners will be 'affected' and outside of which they will not." (IEL's brief at 27.)

Had the trial court extended the class beyond the close proximity of the landfill (north into Summit and/or Portage Counties, *e.g.*) appellants' "arbitrary" argument would be cognizable.

We concur with appellee that the instant certification would withstand even a *de novo* review. IEL's fourth assigned error is overruled.

The only assignment of error set forth by the companies which we have not treated in our review of IEL's four assigned errors is VII, as cited *supra*.

## VII

██ This is a constitutional claim alleging that because of the "confusion" and "trial by parade" which might result from a class action, defendants' fair trial rights would be violated. Although couched in constitutional terms, this claim in reality speaks to the "unmanageability" issue, *viz.*, varying fact patterns producing evidence more prejudicial to some defendants over others. The companies' primary authority in this regard, *San Jose v. Superior Court of Santa Clara* (1974), 12 Cal.3d 447, 115 Cal.Rptr. 797, 525 P.2d 701, nuisance created by overflights, and *In re Fibreboard Corp.* (C.A.5, 1990), 893 F.2d 706, asbestos manufacture, are inapposite. By its very nature (multiple defendants, etc.), the instant case is complex. However, that does not equate to being so "unmanageable" and/or confusing as to unduly prejudice defendants herein. We overrule this assigned error.

All of the assigned errors raised by IEL and companies, and all other appellants who have appeared in the case *sub judice*, are overruled. The judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

MILLIGAN, P.J., and GWIN, J., concur.

APPENDIX

Judgment Entry for *DeSario v. Industrial Excess Landfill, Inc.* (Sept. 5, 1990), Court of Common Pleas of Stark County Case No. 89-570-OC.

JOHN G. HAAS, Judge.

This matter came on for consideration on plaintiffs' motion for class certification pursuant to Civ.R. 23. The court has heard the oral arguments of counsel and has considered the briefs of the parties, the exhibits filed with the briefs, and the depositions filed in the action. The court must make seven affirmative findings before a case may be certified as a class action. Two prerequisites are implicitly required by Civ.R. 23 while five others are specifically set forth. *Warner v. Waste Management, Inc.* (1988) 36 Ohio St.3d 91, 521 N.E.2d 1091.

1. An identifiable class must exist before certification is permissible. The court granted plaintiffs' motion to amend its complaint which resulted in the class being defined as follows:

"All individuals and entities who have owned property during the period of January, 1985 to the present within the geographic area extending southward from Lake Township's (Stark County, Ohio) northern border approximately 17,000 feet and eastward from Lake Township's western border 6,000 feet. As a point of reference at the south end, properties fronting on Crosby Street and southward would not be included. As points of reference on the east side, properties east of those fronting on Mogadore Avenue (south of its intersection with Twin Hills) would not be included, as would properties further north which are east of those at the eastern end of Northdale and those which are east of properties fronting on Judy."

As a result of the amendment of the complaint whereby the plaintiffs restricted the claimants to "owners," the court finds that the proposed class is identifiable through a search of the real estate records of the Stark County Recorder's Office, and accordingly, the plaintiffs have met their burden with regard to the first requirement.

2. Class representatives must be members of the proposed class. The court finds that the plaintiffs in the within action are owners of real estate

within the geographic boundaries of the proposed class and, accordingly, finds that the plaintiffs have met their burden with regard to this requirement.

3. The proposed class is so numerous that joinder of all members is impracticable. Based on the affidavit of Marilyn A. Johnson attached to plaintiffs' motion to certify, the court finds that the proposed class would be composed of owners of approximately one thousand five hundred real estate parcels in northwest Stark County. Accordingly, the plaintiffs have met their burden with regard to this requirement.

4. There are questions of law or fact common to the class. The court finds that the plaintiffs have met their burden with regard to this requirement. Courts generally have given a permissive application to the commonality requirement. This prerequisite has been construed to require a "common nucleus of operative facts." The court finds that there are common operative facts relative to the operation of Industrial Excess Landfill (hereinafter "the Site"), and transportation of materials to the Site and production of materials delivered to the Site. Additionally, questions of law common to the class will be present with regard to duties owed by the operator and owner of the Site, transporters of materials to the Site, and producers of the materials delivered to the Site. The plaintiffs have met their burden with regard to this requirement.

5. The claims or defenses of the representative parties are typical of the claims or defenses of the class. The court finds that this requirement has also been satisfied by the plaintiffs in that the court finds that the claims of the representative parties in this action as owners of property within the geographic boundaries of the proposed class are the same as the claims of the class members, *i.e.* diminution in value of their property arising from the course of conduct of the defendants. While the damages suffered by members of the class may not be identical, the claims arise out of the same conduct, *i.e.* the operation of the Site, the transportation of materials to the Site and the production of materials which were transported to and became part of the Site.

6. The representative parties will fairly and adequately protect the interest of the class. A representative is deemed adequate so long as his interest is not antagonistic to that of the other class members. *Warner v. Waste Management, Inc., supra,* at 98, 521 N.E.2d at 1097–1098. The court finds based on the evidence before it that the class members will fairly and adequately protect the interest of the class. Additionally, the court finds that legal counsel for the plaintiffs have more than sufficient experience, skill and competency to handle the class action. The affidavits attached to plaintiffs'

motion demonstrate clearly the experience and expertise of plaintiffs' counsel in this type of action.

7. The court finds that Civ.R. 23(B)(1)(a) and (B)(1)(b) are not applicable to this action. Accordingly, the court must additionally find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. In making this determination, as was stated in *Warner v. Waste Management, Inc., supra,* at 96, 521 N.E.2d at 1096, the key should be whether the efficiency and economy of common adjudication outweigh the difficulties and complexity of the individual treatment of class members' claims. See, also, Miller, An Overview of Federal Class Actions: Past, Present and Future, (2 Ed.1977), at 49.

The defendants assert that each parcel of real estate is unique and that there would be a dissimilarity in the remedies in the varying amount of damages sought by the members of the class. Additionally, the defendants assert that there will be separate defenses with regard to members of the class and also the issue of proximate cause as it relates to the members of the class. Certainly, these factors should be and have been considered by the court. Numerous cases have been cited by the parties which lead this court to believe there is no common trend or standard which is dispositive for this type of case. Each case must be weighed pursuant to the requirements outlined herein. For example, in *R.S.R. Corp. v. Hayes* (Tex.App.1984), 673 S.W.2d 928, the court, in dealing with a class action by residential property owners against a lead smelter, claiming that lead emissions from the smelter damaged landowners within a two-mile radius, pointed out fifteen predominant issues. The court further found that the undisputed facts in that case showed that the amount of lead on each class plaintiff's land varied greatly. Accordingly, they found that the amount of lead on the class member's property and the question of whether the lead, if any, was at a hazardous level which injured the class member was a question not common to the class, because when it was answered as to one class member, it would not be answered as to all class members. Accordingly, in that case the court held that the predominant questions in the case were not questions of law or fact common to the members of the class but rather were questions which affected individual members of the class. The court, therefore, affirmed the court of appeals decision which reversed the trial court's certification of the class.

However, in *McCastle v. Rollins Environmental Services* (La.1984), 456 So.2d 612, the Louisiana Supreme Court reversed trial and appellate court decisions denying class certification status to a suit brought on behalf of four

thousand residents against the operator of a hazardous waste dump. In that case, the Supreme Court held that the fact that individuals may have been injured or unreasonably inconvenienced by noxious gases on varying dates by the defendant's land farm operations did not constitute a material variation in the elements of the class members' claim. That court also recognized the difficulty which may be encountered in managing a class action litigation and found that it did not outweigh the economies to be derived from the unitary adjudication.

The court agrees with the position of the plaintiffs that in Ohio, to recover damages under a private nuisance theory, the plaintiffs need not show a physical intrusion onto their land. The court further agrees that a class action may be premised on the public's perception of contamination irrespective of actual land contamination.

The court recognizes that there is an issue in the present case concerning the varying amounts of damages, if any, to individual class members. However, the court has the authority to make orders as are appropriate such as to break down the class by geographical areas and by dates of acquisition of property, to conform to the evidence. The court finds that because the claimants are defined as "owners," information would be readily available concerning the identification, location, and date of acquisition of the various claimants and that the issue of damages will be manageable. The court further recognizes that there may be separate defenses which may be applicable to the members of the class. Again, for the reasons aforestated, the court believes that this issue is also manageable. The court also recognizes there will be an issue concerning the various conduct of each of the defendants over different periods of time.

However, after taking into consideration all of those issues, the court believes that said issues are outweighed (as opposed to outnumbered) by the primary issues in the case, which are whether or not hazardous waste material of the quality and quantity capable of causing damage and unreasonable inconvenience, as alleged by the plaintiffs, was present on the Site on the pertinent dates as alleged by the plaintiffs; the amount of and type of toxic waste produced by defendants which was transported to the Site; the amount of leakage, spilling and dumping of said toxic waste and the extent of contamination of adjoining properties; whether the conduct of the owner-operator was in violation of the standard of reasonable conduct for a Site at which toxic waste was stored and disposed of; whether the defendants breached a duty to refrain from acting in a manner which caused plaintiffs and class members to be unreasonably threatened with exposure to toxic waste with a potential for diminution of value of their real estate; and

whether defendants breached a duty of care toward class members with respect to their selection of the Site as a repository for the toxic waste.

The court finds that the basic similarity of the operative facts which give rise to the various allegations against the defendants are common to the class members, and further finds that these issues predominate over issues affecting only individual members of the proposed class. Furthermore, the court finds that a class action, while cumbersome, is superior to other available methods for the fair and efficient adjudication of the controversy. In making this determination, the court has reviewed the matters pertinent to the superiority requirement as set forth in Civ.R. 23(B)(3)(a), (b), (c) and (d).

While the court suspects that if the class certification was denied, that numerous actions by individual property owners would not in fact be filed, the court further finds that its conclusion is based on the economic realities facing the individual property owners in attempting to prove their individual cases. The court finds insufficient evidence has been produced to demonstrate that a substantial number of the members of the class would be interested in individually controlling the prosecution or defense of their separate actions. The pending actions outlined by the defendants do not demonstrate that the members of the class will wish to individually control their own litigation.

The court is concerned by the fact that evidence has not been produced which demonstrates that numerous actions were already filed by members of the class. Certainly, class certification would be an easier decision if the court was aware of numerous claims filed by members of the class which would have resulted in a multiplicity of lawsuits burdening the dockets with the potential for disparate findings. However, this is one only factor that the court must consider, and the economic realities and a possible lack of information available to the potential claimants may well be the reason for the lack of litigation in this area.

With regard to Subsection (c) and Subsection (d) of Civ.R. 23(B)(3), the court has already spoken. The fact that a class action will provide difficulties in management is outweighed by the benefit of resolving the many issues in common in one forum. To the extent liability is found, a class action provides the potential for redressing injuries suffered by individual property owners who might not otherwise have the opportunity to be compensated.

For the foregoing reasons, the court sustains the motion of the plaintiffs to certify the action as a class action. As provided by Civ.R. 23(C)(1), this order is conditional and may be altered or amended to the extent subsequent evidence produced in this case makes such an order appropriate.

It is therefore Ordered, Adjudged and Decreed that the motion of the plaintiffs to certify the within action as a class action is hereby sustained. The court finds there is no just cause for delay.

*Motion sustained.*