**AMERADA HESS CORPORATION, et al., Appellants,**

**v.**

**Jorge GARZA, et al., Appellees.**

**No. 13–95–554–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 22, 1996.

Rehearing Overruled Oct. 3, 1996.

John L. Hill, Jr., Joseph Edward Herbert, James E. Essig, Liddell, Sapp, Zivley, Hill & LaBoon, Houston, Rick G. Strange, Cotton, Bledsoe, Tighe & Dawson, Midland, George Scott Christian, Austin, amicus curiae.

Anne Michelle Pike, Marie R. Yeates, J. Harrell Feldt, Vinson & Elkins, Houston, James L. Cornell, R. Scott Hogarty, Kevin Risley, N. Terry Adams, Jr., Gilpin, Paxson & Bersch, Mary Lou Strange, Houston, Ken Fields, Tom Hermansen, Hunt, Hermansen, McKibben & Barger, Corpus Christi, Michael M. Gibson, Bayko, Gibson, Carnegie, Hagan, Houston, R.O.Faulk, Richard Marshall Parr, Kevin L. Colbert, S. Shawn Stephens, Akin, Gump, Strauss, Hauer & Feld, Houston, Jeffrey K. Sherwood, Akin, Gump, Strauss, Hauer & Feld, Gregory T. Perkes, Wood, Burney, Cohn & Viles, Corpus Christi, Richard J. Wilson, Fulbright & Jaworski, Houston, Robert J. Knapp, Thomas J. Meek, Legal Dept. Koch Industries, Wichita, KA, Shirley Selz, Gary, Thomasson, Hall & Marks, Corpus Christi, Ben A. Donnell, Meredith, Donnell & Abernethy, Corpus Christi, Eva M. Fromm, Fulbright & Jaworski, Carla J. Bishop, Gilpin, Paxson & Bersch, Houston, for appellants.

Shari A. Wright, Reich & Binstock, Houston, H. Lee Godfrey, Susman, Godfrey & McGowan, J. Hoke Peacock, III, Dennis Craig Reich, Reich & Binstock, Houston, Steve T. Hastings, Alberto R. Huerta, Huerta, Hastings, Allison, L.L.P., Corpus Christi, Richard Drubel, Stuart Jonathan Dow, Susman & Godfrey, Robert Jay Binstock, Reich & Binstock, Houston, Jeanette Cantu-Bazar, Corpus Christi, for appellees.

Before DORSEY, CHAVEZ and RODRIGUEZ, JJ.

## OPINION

CHAVEZ, Justice.

This is an interlocutory appeal from the trial court's order certifying a class action. In challenging the certification, appellants filed two separate briefs raising substantially similar points of error. We affirm.

Appellees (hereinafter "the named plaintiffs")[1] filed six separate suits against appellants[2] complaining of air pollution and groundwater contamination stemming from the discharge of pollutants from appellants' various facilities. The suits were consolidated for purposes of the present class action certification and for discovery. The action involves approximately 2,500 residential properties located near appellants' numerous refineries, pipelines, and tank storage facilities. Appellants' industrial facilities are alleged to be the sources of the emissions of benzene, hexavalent chromium, and hydrocarbons. The named plaintiffs brought claims for diminution in the value of their real properties, loss of use and enjoyment of their real properties, medical expenses, and a need for medical monitoring under several theories of liability, including negligence, gross negligence, trespass, and nuisance. Named plaintiffs sought certification of a general property damage class and a medical monitoring class.

The trial court denied the request for a medical monitoring class[3] but certified two residential property damage classes along with several subclasses. The two classes are the I-37 North Class and the I-37 South Class which are comprised of all persons who, as of June 1, 1991, were vested with fee title to single family residential real property located within a certain geographical boundary. Subsumed under the I-37 North Class are five subclasses defined, in five-year intervals, according to the property's acquisition date, starting from 1971 and ending in 1991. An additional subclass within the I-37 North Class are members whose real properties overlie or have been contaminated by the subsurface plume of contaminants. Each member of the I-37 South Class also belongs to either of two location subclasses: 1) the Leopard Street Location Subclass or 2) the Agnes Street Location Subclass. In addition, like the I-37 North Class, the I-37 South Class also consists of five subclasses defined according to the property's acquisition date. The trial court ordered that each acquisition date subclass shall be represented by at least one class representative. Furthermore, the court found that named plaintiffs' attorneys are able, available, and qualified for service as class counsels.

Appellants appeal from the trial court's order certifying named plaintiffs' property damage classes. Two sets of appellants filed two separate briefs; appellants will be referred to as "the Coastal appellants" and "the Citgo appellants." Both briefs assert that named plaintiffs failed to fulfill the requirements of Rule 42, they lacked standing to sue, class certification violates the parties' right to a jury trial, and class certification is precluded by the statutory provisions concerning comparative responsibility.

1. The named plaintiffs are: Amelia Garza; Maria Magdalena Garza; Jorge Garza, individually and as legal representative of Jason Manuel, Justin Michael, and Joanna Marie Garza; Verlon Benford Friar, Sr.; Vivian Barnette Friar; Lucy Mae Edwards; St. John First Baptist Church; Roger and Dahlia Garcia, individually and as next friends of Khara B. Garcia; Ernesto Benavides, Sr.; Lucas and Delia Garza, individually and as next friends of John Felix; Domingo Felix; Enedina P. Salazar; Northside Manor Association, L.L.P.; Rene Treviño; Toni Treviño; Antonio Jimenez; Elizabeth Jimenez; Alfonso and Margarita Perez, individually and as next friends of Yolanda Perez; Ernestina M. Perez; Jose Luis Felix; Robert Richard and Ofelia F. Moreno, individually as next friends of Richard R. Moreno; Marcus Moreno; Guadalupe Lugo; Eva Lugo; Julian Simms, Jr.; Selia Simms; Jimmie Barron Villarreal; and Mary Villarreal.

2. Appellants are: The Coastal Corporation; Coastal Holding Corporation; CIC Industries, Inc.; Coastal States Crude Gathering Company; Coastal Refining & Marketing, Inc.; Javelina Company; Amerada Hess Corporation; Koch Refining Company, L.P.; Koch Industries, Inc.; Koch Gathering Systems, Inc.; Koch Oil Company; Champlin Petroleum Company; Champlin Refining, Inc.; Union Pacific Resources Company; Union Pacific Refining, Inc.; Union Pacific Corporation; Mobil Corporation; Mobil Pipeline Company; Mobil Oil Corporation; Kerr–McGee Corporation; Kerr–McGee Refining Corporation; Southwestern Refining Co., Inc. (collectively "the Coastal appellants"); Citgo Petroleum Corporation; Citgo Refining & Chemicals, Inc.; Champlin Refining Company; Champlin Refining & Chemicals, Inc.; and American Chrome and Chemicals, Inc. (collectively "the Citgo appellants").

3. The denial of named plaintiffs' request for a medical monitoring class is not being appealed.

Section 51.014 of the Texas Civil Practice and Remedies Code allows an appeal from an interlocutory order that "certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure." TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(3) (Vernon Supp.1996).

■ Our review of the trial court's certification of this case as a class action is limited to determining whether the trial court abused its discretion. *Amoco Prod. Co. v. Hardy,* 628 S.W.2d 813, 816 (Tex.App.—Corpus Christi 1981, writ dism'd). Trial courts enjoy a wide range of discretion in determining whether they should maintain a lawsuit as a class action. *Vinson v. Texas Commerce Bank—Houston, Nat'l Ass'n,* 880 S.W.2d 820, 823 (Tex.App.—Dallas 1994, no writ). An abuse of discretion does not exist where the trial court bases its decision on conflicting evidence. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). However, a trial court abuses its discretion by failing to properly apply the law to the undisputed facts. *Amoco Prod.,* 628 S.W.2d at 816. The trial court also abuses its discretion when it acts arbitrarily or unreasonably or when it rules based upon factual assertions not supported by material in the record. *Vinson,* 880 S.W.2d at 823. Viewing the evidence in the light most favorable to the trial court's action, we indulge in every presumption that would favor the trial court's ruling. *Id.* The appellate court may not substitute its judgment for that of the trial court. *Davis,* 571 S.W.2d at 862. Therefore, we reverse the trial court for abuse of discretion only if, after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable.

By points five and six, the Citgo appellants allege that the trial court erred in certifying the class action because named plaintiffs failed to satisfy Rule 42(a) and (b). The Coastal appellants assert the same complaints under separate points of error for each element of Rule 42; we will refer to each of the Coastal appellants' points relating to Rule 42 as we discuss each of the requirements.

■ Texas Rule of Civil Procedure 42 governs class actions. Rule 42(a) provides that members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

TEX.R.CIV.P. 42(a). Rule 42(b) provides that an action may be maintained as a class action if it falls within one of four specified categories. Here, the applicable category is subsection (b)(4) which states that a class action is proper if

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

TEX.R.CIV.P. 42(b). The court may divide a class into subclasses when appropriate, TEX.R.CIV.P. 42(d)(2), and order the naming of additional parties in order to insure the adequacy of representation. TEX.R.CIV.P. 42(c)(1). In addition, the court's class certification order "may be altered, amended, or withdrawn at any time before final judgment." TEX.R.CIV.P. 42(c)(1). The court has "the duty of monitoring its class decisions in light of the evidentiary development of the case ... [and] must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Life Ins. Co. of the Southwest v. Brister,* 722 S.W.2d 764, 775

(Tex.App.—Fort Worth 1986, no writ) (quoting *Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir.), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983)).

Rule 42 is patterned after the federal class action rule, and the federal decisions and authorities interpreting it are persuasive. *Smith v. Lewis,* 578 S.W.2d 169, 172 (Tex. Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.); *see* FED.R.CIV.P. 23.

### NUMEROSITY

■ As a prerequisite to class certification, plaintiffs must show that the class is so numerous that joinder of all potential class members is impracticable. TEX.R.CIV.P. 42(a)(1). Named plaintiffs have shown that the potential class size is in the thousands. Because the class of potential plaintiffs, who are owners of over 2,000 separate properties, is too numerous to make joinder of all its members in a single lawsuit practicable, the required numerosity showing has been made. *See Boggs v. Divested Atomic Corp.,* 141 F.R.D. 58, 64 (S.D.Ohio 1991) (thousands of potential plaintiffs too many to be joined in one lawsuit).

### COMMONALITY

Appellants next assert that the many defendants and individualized fact scenarios regarding each individual class member and each individual defendant preclude a finding of commonality of the issues. Appellants argue that different circumstances exist even among the named parties, let alone among the absent class members. Because the class consists of over 2,000 properties located at different distances from appellants' facilities, appellants conclude that there are no common issues at all since the evidence needed to establish appellants' liability and the valuation of plaintiffs' properties will be dependent upon a multitude of individual variables.

■ In order to be certified as a class action, there must be questions of law or fact common to the class. TEX.R.CIV.P. 42(a)(2). The commonality requirement does not mean all questions of law and fact must be identical, but rather that an issue of law or fact exists that inheres in the complaints of all the class members. *Cooper v. University of*

*Tex. at Dallas,* 482 F.Supp. 187, 191 (N.D.Tex.1979); *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 372 (Tex.App.—El Paso 1993, no writ). The existence of significant common legal or factual issues is enough to satisfy the threshold commonality requirement. *Boggs,* 141 F.R.D. at 64.

■ If named plaintiffs prevail as to any one of the common issues of fact and law, all that remains is for members of the class to prove the amount of their individual claims. Appellants point to the varying types of damages that could be recovered if named plaintiffs succeed at trial. However, individual computation of damages for each class member will not prevent class certification. *Angeles/Quinoco Sec. Corp. v. Collison,* 841 S.W.2d 511, 516 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Adams v. Reagan,* 791 S.W.2d 284, 289 (Tex.App.—Fort Worth 1990, no writ). Although the individual amount of damages may vary from class member to class member, the standard conduct of appellants is relative to all potential class members. *Chevron U.S.A. Inc. v. Kennedy,* 808 S.W.2d 159, 162 (Tex.App.—El Paso 1991, writ dism'd w.o.j.).

The present case is quite similar to *DeSario v. Industrial Excess Landfill, Inc.,* 68 Ohio App.3d 117, 587 N.E.2d 454 (1991). In *DeSario,* the plaintiffs filed a class action complaint against numerous defendants arising out of the operation and use of a landfill. The named plaintiffs represented a class defined as individuals and entities who owned real property located within a certain geographic area during a six-year period. The named defendants were the owners and operators of the landfill, transporters of toxic wastes to it, and producers of toxic wastes which were sent over a number of years to the landfill. The class represented owners of some 1,500 real property parcels. The trial court certified the action as a class action pursuant to Ohio's class action rule which consists of the same elements as Texas' Rule 42. In doing so, the trial court acknowledged that "each parcel of real estate is unique and that there would be a dissimilarity in the remedies in the varying amount of damages sought by members of the class."

*See also Boggs,* 141 F.R.D. at 58 (after named plaintiffs alleged that they had been exposed to hazardous wastes emitted from a nearby plant and sued several defendants for the diminution in the value of their real property, court certified a class consisting of all persons living, renting, or owning property within a six-mile radius of the boundaries of the plant).

On appeal, the defendants raised many of the same or similar arguments that appellants here raise. First, similar to the appellants in our case, the defendants in *DeSario* also contended that the many defendants present in the action preclude a finding that common issues of fact and law will predominate; rather, they complicate issues of fact and law to such an extent that class action is inappropriate. Defendants cited to numerous factual issues which are unique to individual class members and are not common to the class as a whole, and argued that even among the named parties, different circumstances exist. Furthermore, defendants asserted that the named plaintiffs' claims were subject to different affirmative defenses. Because the class consisted of 1,500 parcels of land located at different distances and directions from the landfill, each defendant's and each class member's particular circumstances are unique, as is the evidence tending to establish liability and damages. Thus, defendants concluded that there are too many uncommon facts in the case.

The *DeSario* court held that the existence of a single issue common to the class was sufficient to satisfy the rule. *DeSario,* 587 N.E.2d at 458. Not all questions of law and fact need be common to the class. *Id.* The single, common issue was the reduction in property value directly related to the operation and presence of the landfill. The court further stated that "[i]t is settled that individual issues will invariably be present in a class action, and that *the common issues need not be dispositive of the litigation.*" *Id.*

█ Here, despite the individual issues that will be present in the litigation, named plaintiffs have identified a number of common issues, including: 1) facts relative to the operation of appellants' facilities; 2) the extensiveness of the emissions from the fa-

cilities; 3) precautions, if any, to avoid emissions; 4) appellants' liability under the theories of negligence, gross negligence, trespass, or nuisance; and 5) plaintiffs' entitlement to recovery for diminution in property value caused by the emissions and contamination. Thus, we hold that there are questions of law or fact that are common to the class in accordance with Rule 42(a)(2).

## TYPICALITY

Like their fellow appellants, the Coastal appellants contend, in point six of their brief, that the claims and defenses of the representative class members are not typical of those of the class and that the representative class members do not fairly and adequately represent the interests of the class.

█ To determine typicality, the trial court must make a comparison of the claims and defenses of the named plaintiffs with the claims and defenses of the entire group of property owners. *Adams,* 791 S.W.2d at 290. To be typical, the named plaintiffs' claims must arise from the same event or course of conduct giving rise to the claims of other class members. *Id.* These claims must also be based on the same legal theory. *Id.* The claims of the class representatives need only be typical of, not identical, to common claims of the class members. *Id.* Different fact situations of class members do not defeat typicality so long as the claims of the class representatives and class members are based on the same legal or remedial theory. *Id.*

Appellants argue that a jury will need to answer separate jury questions for each property owner depending upon the circumstances of each individual property owner rather than a single question for the whole group. Additionally, plaintiffs' damages must be determined on an individual basis because not all of the plaintiffs were damaged to the same extent.

*DeSario* is again instructive. In *DeSario,* the defendants asserted that the representatives' claims are not typical of the claims of the class members, and that the representatives would not fairly and adequately protect the interests of the class. Defendants in

*DeSario* argued that different proof would be required to establish the claims of the individual members since the circumstances of one homeowner may vary dramatically from those of another homeowner depending on the individual's proximity to the site, time of purchase of home, knowledge at the time of purchase, and the extent of exposure. The court of appeals held that the elements of typicality and adequate representation were met because each class member asserted a claim for the diminution in value of her real property arising from the defendants' course of conduct. *DeSario*, 587 N.E.2d at 457. Although the damage sustained by the members was not identical, the claims arose from the same conduct—operation of the site, transportation of materials to the site, and production of materials which were transported to and became part of the site. *Id.* Complete identity between claims constituting each individual action is not required, only typicality. *Id.* That the amount of damages may differ or that damages may need to be determined on an individual basis does not preclude class certification. *Id.; see also Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988) ("the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible").

Likewise, in *Boggs,* the court found that the typicality requirement was satisfied given that the named plaintiffs' claims that their property interests had been damaged by contamination, affecting their ability to sell their realty for a price unaffected by a purchaser's knowledge of such contamination, were no different in kind from the other class members, notwithstanding the different types of realty involved (e.g.commercial, residential, agricultural), differences in sources of potential contamination (*e.g.* airborne, waterborne, or both), or differences in proximity to the plant. *Boggs,* 141 F.R.D. at 64. All of these claims rested on common legal theories such as negligence, private nuisance, and wanton or willful misconduct. *Id.* The defendants in *Boggs* stressed that many individual differences existed both among named plaintiffs and between the named plaintiffs as a group

and the balance of the class by noting that the individuals differed in terms of exposure to potential carcinogens, uniformity of levels of exposure throughout the six-mile area, and the sources and types of contaminants. Defendants further argued that the damage claims were inherently individualized and therefore atypical. However, the court stated that differences in the situation of each plaintiff or each class member did not necessarily defeat typicality, and that the harm suffered by the named plaintiffs may differ in degree from that suffered by other members of the class so long as the harm suffered is of the same type. *Id.* at 65.

In the case at issue, although the damage sustained by the named parties and class members may not be identical, the typicality requirement has been satisfied in that they all assert claims for the diminution in value of their properties arising from appellants' discharge of pollutants. All of these claims are based on common legal theories of negligence, trespass, and nuisance. Given that the harm suffered by the class representatives and the class members is of the same type, differences in the situation of each plaintiff do not defeat typicality.

Appellants' argument that the presence of even an arguable defense peculiar to different plaintiffs destroys the entire class is incorrect. *Angeles/Quinoco,* 841 S.W.2d at 516. Rule 42 merely requires that the claims of the parties are "typical" of the claims of the class. We hold that the evidence shows that there are typical issues common to large groups of property owners, albeit, in separate subclasses. Because the trial court divided the group into subclasses, the named plaintiffs' claims are those that are typical of the claims of the subclasses that they represent. Therefore, factual differences among some class members do not defeat class certification.

## FAIR AND ADEQUATE REPRESENTATION

Adequate representation consists of two elements: 1) it must appear that the representative parties, through their attorneys, will vigorously prosecute the class

claims, and 2) there must be an absence of conflict or antagonism between the interests of the named plaintiffs and those of other members of the proposed class. *Adams*, 791 S.W.2d at 291. In determining the adequacy requirement, the trial court must inquire into the zeal and competence of class counsel and into the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees. *Id.; Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. *Adams*, 791 S.W.2d at 291.

■■■ First, the named plaintiffs' interests are wholly consistent with the interests of the other class members because each are property owners who have sustained damage to their property stemming from the pollutants emitted from appellants' facilities. Selia Simms and Reverend Verlon Friar, two of the class representatives, testified that they believe that their claims are common and typical of those of the class. They further testified that they are willing and able to represent the class and will ensure that both they and class counsels will prosecute the class claims and protect the interests of the class members. Adequate representation is demonstrated given the fact that the representatives' claims of diminished property value are not antagonistic to that of other class members whose claims are identical. *See DeSario*, 587 N.E.2d at 457.

Second, the trial court determined that class counsels are competent and qualified to pursue the class action. Appellants do not dispute the qualifications of class counsels. Therefore, we hold that the record reflects that named plaintiffs showed that they will fairly and adequately protect the interests of the class.

Having found that named plaintiffs have complied with the requirements of typicality and fair and adequate representation, we overrule the Coastal appellants' sixth point of error.

In summary, the record reflects that all four elements of Rule 42(a) have been met making class certification proper. As required by Rule 42(a)(1), this class is so numerous that joinder of all members would be impractical. The record shows that there are questions of law or fact common to the class pursuant to Rule 42(a)(2), and that the claims or defenses of the representative parties are typical of the claims or defenses of the class, satisfying Rule 42(a)(3). Lastly, named plaintiffs have shown that the representative parties will fairly and adequately protect the interest of the class as required by Rule 42(a)(4). We hold that the trial court did not abuse its discretion in certifying this action as a class action under Rule 42(a). We overrule Citgo appellants' point five.

## RULE 42(b)

Appellants also challenge the named plaintiffs' compliance with Rule 42(b)(4). By points one and two, the Coastal appellants contend that because of the multiple plaintiffs, defendants, causes of action, and injuries, common questions do not predominate over individual questions. By points three, four, and five, Coastal appellants allege that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy because 1) class certification violates the parties' right to a jury trial and 2) certification is precluded by the comparative responsibility statutory provisions. Citgo appellants make the same arguments under points two, three, and six. Additionally, by point nine, Citgo appellants assert that the certified action will be impractical to administer.

Not only must all the elements in Rule 42(a) be satisfied, but one element of Rule 42(b) must also be met. Tex.R.Civ.P. 42. Rule 42(b)(4), which is applicable to the present action, requires that the court find that questions of law or fact common to the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Tex.R.Civ.P. 42(b)(4).

■■■ The test for the court to use in evaluating the predominance issue is not

whether the common issues out-number the individual issues, but instead whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Adams*, 791 S.W.2d at 288. Even in cases where it is not conclusively established that common issues predominate, the most efficient approach is for the trial court to certify the class, and if necessary after the case is developed, to dissolve the class or certify subclasses if common questions will not predominate at trial. *Dresser Indus.*, 847 S.W.2d at 375; *Brister*, 722 S.W.2d at 775.

Common issues of liability, causation, and remedies predominate. If these claims were tried separately, the amount of repetition would be unjustified and inefficient. To the extent that each claim of each plaintiff depends upon proof concerning the history and operation of appellants' facilities; the nature, timing, extent, and cause of emissions; and the generalized impact of the facilities' operations on real property values, that proof would be virtually identical in each case. It would be neither efficient nor fair to force multiple trials to hear the same evidence and decide the same issues.

In arguing that the class action does not comply with Rule 42(b)(4) because the predominant questions in the case are questions which affect only individual members of the class, appellants rely on *RSR Corp. v. Hayes*, 673 S.W.2d 928 (Tex.App.—Dallas 1984, writ dism'd). In *RSR Corp.*, the appellate court reversed the lower court's order certifying a class of persons owning property within a two mile radius of a lead smelter. *Id.* at 933. Alleging that they had been harmed by the lead emissions, the landowners sought a variety of damages including damage to real property and diminution of property value. They based their action on the theories of nuisance, trespass, strict liability, intentional tort, and negligence. In finding that the predominant questions were those which affected individual class members, the court noted that the effects of lead on the class plaintiffs' properties were dependent on the characteristics of the particular inhabitants and their properties. Specifically, the court concluded that

1) the amount of lead on a class member's property, and whether that amount is at a hazardous level which injures the class member, are issues not common to the class, and

2) that the recovery for personal injuries resulting from exposure to the lead varies because lead affects individuals differently and because of the length of time of residence.

*Id.* at 932–33.

The concerns of the court in *RSR Corp.* were resolved by the trial court in the present case. Here, the trial court took these various factors and particularities into consideration and divided the class into subclasses in order to eliminate such problems. As we have stated in our discussion above, we acknowledge that real property is unique; however, the fact that individual questions as to damages may exist does not preclude class certification. *Angeles/Quinoco*, 841 S.W.2d at 516; *Adams*, 791 S.W.2d at 289; *DeSario*, 587 N.E.2d at 457. The uniqueness of each property does not, in itself, prevent a court from concluding that common issues of fact and law concerning all parcels of land justified the proposed subclassification. A valid classification or subclassification does not require that all class members possess identical characteristics; it requires only the existence of significant issues common to the class as a whole so that their adjudication on a class basis will be beneficial to the parties and the court. *Cooper*, 482 F.Supp. at 191; *Dresser Indus.*, 847 S.W.2d at 372; *Brister*, 722 S.W.2d at 772.

Appellants' predominance of individual issues argument is similar to the one made in *Angeles/Quinoco*. *Angeles/Quinoco* involved an unfair exchange offer made by the general partners of eighteen limited partnerships to the limited partners. The district court certified a class consisting of all the limited partners of the limited partnerships. The *Angeles/Quinoco* appellants argued that the differences among the eighteen limited partnerships preclude certification, and they pointed to differences that showed individual questions would predominate over common questions of law or fact. These differences ranged from the financial status of the indi-

vidual partnerships, to the effect of offer on each partnership, the proof required to show a breach of fiduciary duty to each partnership, the different objectives of each individual limited partner, special defenses as to some partners, and the question of individual damages. The court held that none of these differences precluded certification. *Angeles/Quinoco*, 841 S.W.2d at 515. Where the defendant is alleged to have engaged in a common course of conduct, the class certification requirement of commonality has been met. *Id.* at 516.

■ We determine that the operative facts giving rise to the various allegations against appellants are common to the class members and that these issues predominate over any issues affecting only individual members of the proposed class. *See Dresser Indus.*, 847 S.W.2d at 375 (although there were individual questions regarding representations, reliance, damages, defenses and the facts surrounding defendants' activities at each of the 523 oil wells over a six-year period, the issues identified as common to all class members—whether defendants acted negligently, whether defendants pursued a concerted action, and whether the class members sustained damages, and if so, the proper measure of damages—predominated and were sufficient to satisfy Rule 42(b)(4)). Hence, we overrule Coastal appellants' points one and two.

In furtherance of their argument that individual issues predominate, appellants contend that Texas' comparative responsibility scheme precludes class certification. Appellants opine that comparative responsibility cannot be determined in a representative manner by way of a class action because this precludes the trier of fact from hearing evidence concerning the conduct of the absent class members which is necessary in order to allocate responsibility among the claimants and defendants. Therefore, appellants assert that because allocation of responsibility is fact specific as to each class member, thousands of individual trials are required in determining the claimants' percentage of responsibility.

■ The issue of comparative responsibility goes to the substantive merits of the case and is therefore an improper inquiry at this stage of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Nevertheless, appellants' assertion revisits their contentions concerning the issue of the different defenses against each member and the disparity of each member's damages. Differing defenses and individual computation of damages do not defeat class certification. *See Dresser Indus.*, 847 S.W.2d at 373; *Angeles/Quinoco*, 841 S.W.2d at 516. We overrule Coastal appellants' point five and Citgo appellants' point two.

■ In accordance with Rule 42(b)(4), prosecution of these claims as a class action will be a superior method to use for the fair and efficient adjudication of this litigation. It would be impractical to join the owners of over 2,000 properties as plaintiffs in this case, and the management of litigation would be impossible with over 2,000 plaintiffs. Additionally, repeated litigation of the common issues in thousands of individual actions would be grossly inefficient, costly, and a waste of judicial resources. *Adams*, 791 S.W.2d at 290.

Next, appellants raise a constitutional claim alleging violation of their right to a jury trial. Appellants argue that they are entitled to a verdict rendered by one and the same jury, but that the complexity and vast number of issues in the suit place an impossible burden on one jury. According to appellants, forcing the jurors to listen to evidence in several thousand "mini-trials" will create such confusion in the minds of the jurors as to deny them a fair trial.

In *DeSario*, the defendants also raised a constitutional claim alleging that their right to a fair and impartial trial would be violated "because of the inevitable jury confusion which will result from trying issues of liability, damages and defenses which are specific to hundreds of individual plaintiffs in one massive 'trial by parade.'" *DeSario*, 587 N.E.2d at 456 (quoting defendants' brief). The *DeSario* court stated that although couched in constitutional terms, this claim of varying fact patterns is in reality an issue relating to the unmanageability of the litiga-

tion. *Id.* at 459. In rejecting defendants' argument, the court held that

> [b]y its very nature (multiple defendants, etc.), the instant case is complex. However, that does not equate to being so "unmanageable" and/or confusing as to unduly prejudice defendants herein.

*Id.* Accordingly, the court affirmed the class action certification order. *Id.*

■ We concur with the *DeSario* court's analysis. The trial court is charged with monitoring its class decisions and managing the class litigation. We are confident that the trial court will submit the proper questions to the jury and proceed in a manner that will be fair to the litigants. We overrule Coastal appellants' point four and Citgo appellants' point three.

The record supports the trial court's conclusion that class action is the superior means of resolving this dispute, and that any difficulties it may entail are outweighed by the benefits of class-wide resolution of common issues. Indeed, economic realities facing the individual property owners in attempting to prove their individual cases dictate that a class action provides what may be the only possible means of redress. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (because of plaintiffs' small claims, most of the plaintiffs would have no realistic day in court if a class action were not available).

We hold that common questions predominate over any questions affecting only individual members. We further hold that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The elements necessary to support a finding of the applicability of Rule 42(b)(4) are met. We overrule Coastal appellants' point three and Citgo appellants' points six and nine.

## STANDING

Coastal appellants, by point eight, and Citgo appellants, by points one and four, argue that class certification is improper because the class representatives lack standing to sue. Appellants base their argument on the contention that there is no recognized cause of action for a purely economic damage, such as diminution in property value, when there has been no physical injury to the property. Therefore, there is no justiciable controversy for the class representatives or absent class members to assert.

■ Appellants confuse the legal concept of standing with the ability to prove the merits of a cause of action. Standing is a component of subject matter jurisdiction. *Cedar Crest Funeral Home, Inc. v. Lashley,* 889 S.W.2d 325, 329 (Tex.App.—Dallas 1993, no writ). Either the parties or the court may raise the issue of standing for the first time on appeal. *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 445–56 (Tex.1993). Before a plaintiff may establish his competency to represent a class under Rule 42, he must first meet the threshold requirement of standing to bring the action. *Texas Dep't of Mental Health & Mental Retardation v. Petty,* 778 S.W.2d 156, 164 (Tex.App.—Austin 1989, writ dism'd w.o.j.). Therefore, it is necessary to determine whether the named representative plaintiffs meet the threshold requirement of individual standing to sue.

■ Standing deals with whether a litigant is the proper person to bring a lawsuit, not whether that party can ultimately prevail on its claims. *Dresser Indus.,* 847 S.W.2d at 375–76. Standing consists of some interest peculiar to the person, or here, the class which is not shared by the general public. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). Persons have standing to sue if they can show: 1) they have sustained some direct injury as a result of a wrongful act; 2) there is a direct relationship between their alleged injury and the claim sought to be adjudicated; 3) they have a personal stake in the controversy; 4) the challenged action has caused them an injury in fact, whether economic, recreational, environmental or otherwise; or 5) they are appropriate parties to assert the public's interest in a matter, as well as their own. *Precision Sheet Metal Mfg. Co., Inc. v. Yates,* 794 S.W.2d 545, 551–52 (Tex.App.—Dallas 1990, writ denied).

■ Because standing is a component of subject matter jurisdiction, we consider the plaintiffs' standing under the same standard by which we review subject matter jurisdiction. *Cedar Crest*, 889 S.W.2d at 330. That standard requires the pleader to allege facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Id.* We construe the pleadings in favor of the plaintiffs and look to the pleaders' intent. *Id.* If the plaintiffs lack standing, the trial court has no jurisdiction over the merits of the claim, and the entire cause must be dismissed. *Id.*

■ The class representatives and members each have an interest in their properties which are alleged to have been damaged by the contamination resulting from appellants' discharge of pollutants. If they prevail, they will all have claims for money damages against appellants. They certainly have standing to bring this lawsuit whether or not they can ultimately win each of their causes of action. Whether a purely economic loss is a legally cognizable injury is a merits issue. *See generally Boggs*, 141 F.R.D. at 61. Class certification is not the appropriate stage of litigation for evaluating the substantive merits of each class member's claim. *See Eisen*, 417 U.S. at 178, 94 S.Ct. 2140 ("[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 [federal class action rule] are met") (quoting *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971)). A more appropriate avenue for this argument is via a motion for summary judgment.

■ Moreover, appellants' contention that the plaintiffs cannot recover a purely economic loss such as diminution in property value is incorrect. Diminution in property value is one type of damage recoverable for nuisance. *Bay Petroleum Corp. v. Crumpler*, 372 S.W.2d 318, 320 (Tex.1963). Damages recoverable for nuisance are not measured by reduction in value of land for actual use to which it is put, but rather by reduction of its market value, considering any use to which it may be appropriated. *Meat Producers, Inc. v. McFarland*, 476 S.W.2d 406, 410 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). Damages to land from nuisance are not limited to physical disturbance of soil or water since nuisance is by definition a non-trespassory invasion of another's interest in use and enjoyment of land, and such an invasion may be by pollution of air as well as by disturbance of soil. *Id.*

We therefore find that the trial court did not err in determining that the class has standing to sue. We overrule Coastal appellants' point eight and Citgo appellants' points one and four.

## LEGAL SUFFICIENCY

■ By point seven, Coastal appellants urge that there is legally insufficient evidence to support the class certification. To entertain such contentions at this stage of the litigation requires us to determine the merits of the plaintiffs' claims which is not appropriate when reviewing a class certification order. *See Dresser Indus.*, 847 S.W.2d at 376. So long as the trial court's class certification order was properly based upon the material before the court, which it was, the court's decision cannot be faulted simply because plaintiffs' proof may ultimately fail. *Id.; Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975). We overrule Coastal appellants' point seven.

## ADEQUACY OF CLASS DEFINITION

By points seven and eight, Citgo appellants complain that the class action denies appellants due process of law because the certified classes are not adequately identified and defined.

■ Although Rule 42 does not require specificity in the class definition, case law has held that a proposed class must be adequately defined and clearly ascertainable. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970); *Reserve Life Ins. Co. v. Kirkland*, 917 S.W.2d 836, 839–40 (Tex.App.—Houston [14th Dist.] 1996, n.w.h.). A proposed class must be clearly defined so that it is administratively feasible for the court to determine whether a particular individual is a member. *Reserve Life Ins. Co.*, 917 S.W.2d at 840. Vague and amorphous definitions do not

meet the requirement of a sufficiently definite class definition. *Id.*

We hold that the class definitions were not vague or overbroad. Class members are clearly defined as those owning real property zoned for single family residential use within certain geographical areas and during specific dates of acquisition. Class membership is identifiable and ascertainable from public records such as real estate records or tax rolls. As we have stated, the trial court has the authority to alter, amend, or withdraw the class determination in the event the court determines the class is unworkable or is overbroad. TEX.R.CIV.P. 42(c)(1). We overrule Citgo appellants' points seven and eight.

## CONCLUSION

We find no abuse of discretion in the trial court's conclusion that this lawsuit is certifiable as a class action. The order of the trial court is therefore affirmed.